**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------- X
MAN ZHANG and CHUNMAN ZHANG,          :
individually, and as ADMINISTRATORS   :
of the estate of ZHIQUAN ZHANG,       :
deceased,                             :
                                      :
            Plaintiffs,               :
                                      :
    -against-                         :
                                      :
THE CITY OF NEW YORK, THE NEW YORK    :
CITY DEPARTMENT OF CORRECTION, RIKERS :
ISLAND FACILITIES, NEW YORK CITY      :
HEALTH AND HOSPITALS CORPORATION,     :
CORIZON HEALTH, INC., BILL DE BLAISO, :
individually, and as MAYOR OF THE     :
CITY OF NEW YORK, JOSEPH PONTE,       :
individually, and as then            :
COMMISSIONER OF THE NEW YORK CITY     :
DEPARTMENT OF CORRECTION, RAM RAJU,   :
individually, and as then PRESIDENT   :
OF NEW YORK CITY HEALTH AND HOSPITALS :
CORPORATION, PATSY YANG,              :
individually, and as NEW YORK CITY    :
HEALTH AND HOSPITALS CORPORATION'S    :
SENIOR VICE PRESIDENT FOR             :
CORRECTIONAL HEALTH SERVICES, KAREY   :
WITTY, individually, and as CHIEF     :
EXECUTIVE OFFICE OF CORIZON HEALTH,   :
INC., NEW YORK CITY CORRECTION        :
OFFICERS, "JOHN AND JANE DOES 1-10",  :
in their individual and official      :
capacities, NEW YORK CITY HEALTH AND  :
HOSPITALS CORPORATION EMPLOYEES AND   :
AGENTS, "JOHN AND JANE DOEES 11-20",  :
in their individual and official      :
capacities, CORIZON HEALTH, INC.      :
EMPLOYEES AND AGENTS, "JOHN AND JANE  :
DOES 21-30", in their individual and  :
official capacities,                  :
                                      :
            Defendants.               :
-------------------------------------- X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 06/28/2018_____

No. 17 Civ. 5415 (JFK)
**OPINION & ORDER**

APPEARANCES

FOR PLAINTIFFS
        David Yan
        LAW OFFICES OF DAVID YAN

FOR DEFENDANTS
        Daniel Gerard May
        Joseph Schmulewitz
        Laura Anne Delvecchio
        Ryan Michael Cleary
        Tucker Christian Kramer
        HEIDELL, PITTONI, MURPHY & BACH, LLP

**JOHN F. KEENAN, United States District Judge:**

        Plaintiffs Man Zhang, and Chunman Zhang (both surviving

sons of Mr. Zhang ) and the Administrators of decedent Zhiquan

Zhang's ("Mr. Zhang") estate (collectively, the "Plaintiffs")

bring this action alleging that Defendants the City of New York;

the New York City Department of Correction; Rikers Island

Facilities; New York City Health and Hospitals Corporation

("NYCHHC"); Corizon Health, Inc. ("Corizon"); Bill de Blasio

("Mayor de Blasio"); Joseph Ponte ("Mr. Ponte"); Ram Raju ("Dr.

Raju"); Patsy Yang ("Dr. Yang"); Karey Witty ("Mr. Witty"); New

York City Corrections Officers John and Janes Does 1-10; New

York City Health and Hospitals Corporation Employees and Agents

John and Jane Does 11-20; and Corizon Health, Inc. Employees and

Agents John and Jane Does 21-30 (collectively, the "Defendants")

are liable for Mr. Zhang's death while he was a pretrial

detainee at Rikers Island prison.  Plaintiffs allege that Mr.

Zhang died as a result of inadequate medical care during his

year at the prison.  Defendants move to dismiss Plaintiffs'
complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).
For the reasons that follow, Defendants' motion is GRANTED in
part and DENIED in part.

## I. <u>Background</u>

### A. Factual Background

The following facts and allegations are taken from the
complaint.  On April 18, 2015, following his arrest on
unspecified charges, Mr. Zhang was detained at Rikers Island
prison to await trial. (Compl. ¶ 67.)  On the same day, during a
routine medical examination, employees and agents of NYCHHC
found Mr. Zhang had hypertension—a condition he had suffered for
years prior and for which he already took medication—and
coronary heart disease. (<u>Id.</u> ¶¶ 68, 69.)  The NYCHHC agents and
employees prescribed Mr. Zhang Norvasc and Ibuprofen to treat
his hypertension. (<u>Id.</u> ¶ 69.)

After this treatment, Mr. Zhang complained of chest pain to
Defendants New York City Corrections Officers "John and Jane
Does 1-10" ("NYCCO Does 1-10"), who did not respond. (<u>Id.</u> ¶ 70.)
When New York City Health and Hospital Corporation Employees and
Agents "John and Jane Does 11-20" ("NYCHHC Does 11-20") "and/or"
Corizon Health Inc. Employees and Agents "John and Jane Does 21-

30" ("Corizon Does 21-30")[1] visited Rikers Island, they prescribed Mr. Zhang Norvasc again, but did not take "appropriate" medical steps to treat his chest pains. (Id.)

On June 9, 2015, Mr. Zhang complained of chest pain to NYCCO Does 1-10, who called medical emergency services. (Id. ¶ 71.)  NYCHHC Does 11-20 "and/or" Corizon Does 21-30 responded to the emergency call, at which point Mr. Zhang told them he had been experiencing pain in the left side of his chest from front to back for the last four days. (Id. ¶ 71)  Mr. Zhang was transferred to unspecified Defendants' clinic where he was provided with costochondritis treatment and Ibuprofen to relieve the pain. (Id.)  Mr. Zhang received no other treatment. (Id.)

On June 10, 2015—the day after his initial complaint and treatment—Mr. Zhang was seen by unspecified Defendants' staff at Defendants' clinic where he was provided with Ibuprofen for lumbago, Zocor for hyperlipidemia, and Norvasc for hypertension. (Id. ¶ 72.)  Mr. Zhang received no other treatment. (Id.)

---

[1] At the end of December 2015, Corizon's contract with the City of New York to provide health services and medical treatment for the inmates of Riker's Island expired at which time NYCHHC took over. (Id. ¶¶ 5, 7.)  NYCHHC completed credential reviews and background checks of all 1,200 workers Corizon employed and rehired 85 percent. (Id. ¶ 8.)

On unspecified dates, between June 10, 2015 and July 6, 2015,[2] Mr. Zhang continued to complain to NYCCO Does 1-10 about his chest and lower back pain. (Id. ¶ 73.)

On July 6, 2015, NYCHHC Does 11-20 "and/or" Corizon Does 21-30 visited Mr. Zhang at Rikers Island in response to his complaints of chest and lower back pain. (Id. ¶ 74.)  They provided him with Naprosyn for lumbago, but administered no other "check ups" or treatment. (Id.)  Mr. Zhang continued to complain to unspecified Defendants about chest pain. (Id. ¶ 75.)

On September 5, 2015 at 9:45 a.m., NYCHHC Does 11-20 "and/or" Corizon Does 21-30 responded to Mr. Zhang's emergency call. (Id. ¶ 76.)  Through a fellow inmate who spoke Chinese,[3] Mr. Zhang explained that he had been experiencing chest pain since the previous day, "that he would feel more pain when he was not pressing his chest wall," and "that he would not feel more pain when he pressed his chest wall." (Id.)  NYCHHC Does 11-20 "and/or" Corizon Does 21-30 brought Mr. Zhang to "the clinic" where they gave him Aspirin and Nitrostat for his chest pain. (Id.)  At 10:40 a.m., after the treatment had no effect, NYCHHC Does 11-20 "and/or" Corizon Does 21-30 handed Mr. Zhang

---

[2] Though the complaint's timeline is at times unclear, the Court infers a date range here and at certain points elsewhere from its chronology.
[3] Plaintiffs' filings are silent as to Mr. Zhang's command of English.

over to EMS who gave him Ibuprofen despite Mr. Zhang's
complaints of constant pain at level 4 of 10. (Id.)  Mr. Zhang
"was not allowed to be hospitalized." (Id.)

On September 7, 2015, Mr. Zhang was brought back to
unspecified Defendants' clinic for a follow up regarding his
chest pain. (Id. ¶ 77.)  There, Mr. Zhang was provided with
sarna lotion for xerosis cutis and Norvasc for hypertension.
(Id.)  NYCHHC Does 11-20 "and/or" Corizon Does 21-30 claimed
that Mr. Zhang "denied chest pain, sob, numbness, tingling,
paresthesia, or any other problem"[4] and decided that no further
treatment was needed for Mr. Zhang's chest pain. (Id.)  They
provided him with "no other check ups or treatment." (Id.)

On September 13, 2015, Mr. Zhang complained that he felt
lightheaded and dizzy. (Id. ¶ 78.)  At unspecified Defendants'
clinic, unspecified Defendants gave him Norvasc for hypertension
and Meclizine CI and Hydrochlorothiazine for vertigo NOS. (Id.)
Unspecified Defendants provided him with no other check up or
treatment. (Id.)  NYCHHC Does 11-20 "and/or" Corizon Does 21-30
failed to diagnose Mr. Zhang's chest pain and connect his chest
pain with possible seizures and cardiac arrest. (Id.)

On October 20, 2015, Mr. Zhang underwent a routine medical
examination during which NYCHHC Does 11-20 "and/or" Corizon Does

---

[4] The Court is uncertain what "sob" means in this context.

21-30 examined his heart. (Id. ¶ 79.)  NYCHHC Does 11-20 "and/or" Corizon Does 21-30 "failed to inquire, examine, and note Mr. Zhang's chest pain," despite his medical history. (Id.)

On November 12, 2015, NYCHHC Does 11-20 "and/or" Corizon Does 21-30 collected a sample from Mr. Zhang "for lipid screen for coronary risk." (Id. ¶ 80.)  On November 13, 2015, NYCHHC Does 11-20 "and/or" Corizon Does 21-30 reviewed the lipid screen results with Mr. Zhang but again "failed to inquire, examine, and note Mr. Zhang's chest pain." (Id. ¶ 81.)  They also failed to diagnose Mr. Zhang's chest pain and connect his chest pain with possible seizures and cardiac arrest. (Id.)

Starting in December 2015, Mr. Zhang's chest pain would cause him to wake up in the middle of the night, waking other inmates with his "moaning, grunting and groaning." (Id. ¶ 82.)

On January 14, 2016, NYCHHC Does 11-20 "and/or" Corizon Does 21-30 visited Mr. Zhang in response to a sick call. (Id. ¶ 83.)  They provided him with the same prescriptions for hypertension and hyperlipidemia, but provided him with no treatment for chest pain. (Id.)

At unspecified times in February 2016, Mr. Zhang's fellow inmates noticed his chest and left shoulder pain was becoming increasingly severe compared to his pain in January. (Id. ¶ 85.)

On February 15, 2016, NYCHHC Does 11-20 "and/or" Corizon Does 21-30 visited Mr. Zhang in response to complaints that his

7

left shoulder pain had lasted more than four weeks. (Id. ¶ 84.)
After they found Mr. Zhang "had painful limitation in raising
his left upper extremity above the left shoulder level," they
provided Mr. Zhang with Ibuprofen, Motrin, and Robaxin and
referred him to physical therapy. (Id.)

On February 22, 2016, NYCHHC Does 11-20 "and/or" Corizon
Does 21-30 responded to Mr. Zhang's emergency call concerning
his left shoulder pain. (Id. ¶ 86.)  Mr. Zhang denied that he
had suffered any trauma, injury, or accident which might have
caused the pain. (Id.)  NYCHHC Does 11-20 "and/or" Corizon Does
21-30 erroneously recorded the pain as "left hand pain." (Id.)
NYCHHC Does 11-20 "and/or" Corizon Does 21-30 did not review Mr.
Zhang's medical history and "erroneously" referred him to
physical therapy. (Id.)

Starting sometime in March 2016, Mr. Zhang would wake up
during the night screaming and yelling about his shoulder and
chest pain loudly enough to wake fellow inmates. (Id. ¶ 87.)
NYCCO Does 1-10 ignored Mr. Zhang's pleas to go to the emergency
room to treat his pain. (Id.)

In early March 2016, Mr. Zhang's fellow inmate called "the
Plaintiffs and [Mr. Zhang's] family" to inform them that Mr.
Zhang had severe shoulder and chest pain that stopped him from
sleeping. (Id. ¶ 88.)  The inmate asked them to contact the
prison to have Mr. Zhang transferred to a hospital. (Id.)

Sometime in March 2016, Mr. Zhang talked to the "Plaintiffs
and [his] family" and told them that when he experienced pain,
corrections officers would not let him go to see a doctor
without an appointment, however, appointments had to be
requested in advance and required a long waiting period. (Id. ¶
89.)  Mr. Zhang explained he was only given painkillers when he
was brought to the clinic, even though he had told the staff his
pain was severe. (Id. ¶ 90.)  Mr. Zhang further advised his
family against contacting the prison as he believed such efforts
would be futile. (Id.)

On March 8, 2016, Mr. Zhang complained of shoulder pain
which Plaintiffs allege was misdiagnosed "as mild degenerative
disease of shoulder bursitis/tendonitis." (Id. ¶ 91.)  Though
Mr. Zhang was referred to physical therapy, he refused it,
apparently, as he knew his pain was not related to his
shoulder's physical condition. (Id.)

On March 10, 2016, Mr. Zhang was referred to Christina
Pillora, PT ("Ms. Pillora")—an employee or agent of NYCHHC
"and/or" Corizon—for physical therapy for his left shoulder
pain. (Id. ¶ 93.)  Ms. Pillora noted that Mr. Zhang had
difficulty raising his left arm above his head, that the pain
had started on January 20, 2016 without a known cause, and that
the pain medicine he was taking had no effect. (Id.)  Ms.
Pillora, that day and during Mr. Zhang's visits on March 17 and

9

24, failed to connect Mr. Zhang's severe left shoulder pain with "the seizures and/or cardiac arrest that might have occurred to him." (Id. ¶¶ 93, 95-96)

On March 14, 2016, Mr. Zhang refused to take Zocor and Norvasc because the medicines would not relieve him from his chest severe pain during the day and night, but requested eyeglasses for blurry vision. (Id. ¶¶ 92, 94.)  On March 17 and 24, 2016, Mr. Zhang saw Ms. Pillora, but refused physical therapy because he believed it would not cure the real issues which were his seizures and heart failure. (Id. ¶ 95-96.)

On April 18, 2016, at around 7:30 a.m., Mr. Zhang demanded "to go out to have fresh air because he could not breathe." (Id. ¶ 97.)  At around 2:30 p.m. he collapsed due to heart failure. (Id.)  A New York Department of Corrections officer performed chest compressions before NYCHHC Does 11-20 responded to the emergency call. (Id. ¶ 98.)  Though NYCHHC Does 11-20 reportedly arrived "in a timely fashion", Plaintiffs allege that they were actually unduly delayed "due to the setting" of the part of Rikers Island where Mr. Zhang was held. (Id. ¶ 99.)  NYCHHC Does 11-20 were unable to find an automatic external defibrillator. (Id.)  Dr. Wachtel, a NYCHHC "employee and/or agent," pronounced Mr. Zhang dead due to cardiac arrest at 3:09 p.m. (Id.)  EMS did not arrive before Mr. Zhang's death. (Id. ¶ 100.)

On April 19, 2016, a medical examiner performed an autopsy
and found Mr. Zhang's cause of death was "hypertensive and
atherosclerotic cardiovascular disease." (Id. ¶ 101.)

## B. Procedural History

On July 17, 2017, Plaintiffs filed the complaint alleging
eight causes of action against Defendants:  (1) violations of
the Fifth, Eighth, and Fourteenth Amendment rights of equal
protection and substantive due process under 42 U.S.C. § 1983
(Id. ¶¶ 174-181); (2) wrongful death entitling Plaintiffs to
recovery under New York Estate Powers and Trust Law §§ 5-4.1 and
5-4.3 (Id. ¶¶ 182-185); (3) deprivation of society, services and
parental guidance of Mr. Zhang (Id. ¶¶ 186-189); (4)
discrimination under § 504 of the Rehabilitation Act of 1973 (29
U.S.C. § 794a(a)) and Title II of the Americans with
Disabilities Act (42 U.S.C. § 12131, et seq.) (Id. ¶¶ 190-193);
(5) negligence and malpractice (Id. ¶¶ 194-203); (6)
disregarding duty to supervise and train employees and staff
(Id. ¶ 204-208); (7) infliction of intentional and negligent
emotional distress (Id. ¶¶ 209-211); and (8) fraudulent
concealment (Id. ¶¶ 212-220).

On October 21, 2017, Defendants filed a Motion to Dismiss
Plaintiffs' complaint pursuant to Rule 12(b)(6).  Defendants
moved to dismiss all federal claims and all but two state
claims. (Defs.' Mem. in Support at 6-8 [hereinafter "Defs.'

Mem."], ECF. No. 64 (filed Dec. 5, 2017).)  However, Defendants contend that should the Court dismiss all federal claims in this case, the Court should also decline to exercise supplemental jurisdiction over the state claims. (Defs.' Mem. at 6.)

## II. Legal Standards

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  The court's charge in ruling on a Rule 12(b)(6) motion "is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." GVA Market Neutral Master Ltd. v. Veras Capital Partners Offshore Fund, Ltd., 580 F. Supp. 2d 321, 327 (S.D.N.Y. 2008) (quoting Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of New York, 375 F.3d 168, 176 (2d Cir. 2004)).

The Court must construe the complaint in light most favorable to the plaintiff, "taking its factual allegations to be true and drawing all reasonable inferences in the plaintiff's favor." Harris v. Mills, 572 F.3d 66, 71 (2d Cir. 2009).  The Court, however, is not required to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." Iqbal, 556 U.S. at 678.  A complaint that offers

such "labels and conclusions" or naked assertions without "further factual enhancement" will not survive a motion to dismiss. Id. (citing Twombly, 550 U.S. at 555, 557).

### III. Discussion

#### A. Federal Claims

#### 1. 42 U.S.C. § 1983 Claims

Plaintiffs allege that under 42 U.S.C. § 1983 Defendants' "reckless, outrageous, willful, wanton, malicious, negligent and/or intentional" actions and omissions done while they were "acting under the color of state law" violated Mr. Zhang's Fifth Amendment right to due process, his Eighth Amendment "right to be free from cruel and unusual punishment", and his Fourteenth Amendment rights to due process and equal protection. (Compl. ¶ 180.)

Defendants make three separate arguments in response. First, Defendants argue that a pretrial detainee's "claims regarding medical treatment arise under the Due Process Clause of the Fourteenth Amendment (and not the Fifth or Eighth Amendment[s])" as Plaintiffs have alleged. (Defs.' Mem. at 9 (citing Darnell v. Pineiro, 849 F.3d 17, 29 (2d Cir. 2017)).) While such a Fourteenth Amendment due process claim is sustainable, Defendants argue that Plaintiffs have failed to adequately plead such a claim. (Id. at 10-12.) Second, Defendants argue that issues with Mr. Zhang's medical care arose

from disagreements with medical personnel and, as such, do "not rise to the level of a constitutional violation." (Id. at 12-13 (citing Chance v. Armstrong, 143 F.3d 698, 703 (2d Cir. 1998)).) Third, Plaintiffs have failed to allege a basis for "supervisory liability" that would allow Defendants Mayor de Blasio, Mr. Ponte, Dr. Raju, Dr. Yang, and Mr. Witty to be found liable for these violations. (Id. at 13-14.)  Finally, Defendants argue that Plaintiffs have failed to specify an official policy, practice or custom that would allow Defendants the City of New York, NYCHHC, or Corizon to be found liable for these violations. (Id. at 14-16.)

### a. Eighth Amendment – Cruel and Unusual Punishment

In Darnell the Second Circuit states that "[a] pretrial detainee's claims of unconstitutional conditions of confinement are governed by the Due Process Clause of the Fourteenth Amendment, rather than the Cruel and Unusual Punishments Clause of the Eighth Amendment." Darnell, 849 F.3d at 29 (citing Benjamin v. Fraser, 343 F.3d 35, 49 (2d Cir. 2003), overruled on other grounds by Caiozzo v. Koreman, 581 F.3d 63, 70 (2d Cir. 2009)); see also Silvera v. Connecticut Dep't of Corrs., 726 F. Supp. 2d 183, 190 (D. Conn. 2010) ("Although a convicted prisoner's allegations of inadequate health care are evaluated under the Eighth Amendment's prohibitions of cruel and unusual punishment, the comparable rights of a pretrial detainee . . .

14

are secured by the Due Process Clause of the Fourteenth
Amendment.")  Indeed, Plaintiffs themselves concede as much in
the complaint stating that "[t]he Fourteenth Amendment's due
process clause governs the right of pre-trial detainees such as
[Mr. Zhang] not to be subjected to cruel or unusual punishment
just as the Eighth Amendment governs the rights of convicted
prisoners in this regard.  The same legal standard that governs
conditions-of-confinement claims under the Eighth Amendment is
applicable to such claims under the Fourteenth Amendment."
(Compl. ¶ 158.)  Thus, Plaintiffs' Eighth Amendment claim under
§ 1983 is inapplicable and is dismissed.

### b. Fifth Amendment – Due Process

"[A] person detained prior to conviction receives
protection against mistreatment at the hands of prison officials
under the Due Process Clause of the Fifth Amendment if the
pretrial detainee is held in federal custody, or the Due Process
Clause of the Fourteenth Amendment if held in state custody."
Caiozzo, 581 F.3d at 69 (comparing Cuoco v. Moritsugu, 222 F.3d
99, 106 (2d Cir. 2000) (applying the Fifth Amendment to a
federal detainee), with Liscio v. Warren, 901 F.2d 274, 275-76
(2d Cir. 1990) (applying the Fourteenth Amendment to a state
detainee)), overruled on other grounds by Darnell, 849 F.3d 17.
As Mr. Zhang was being held in state custody, Fifth Amendment
due process is inapplicable here.  This claim is dismissed.

### c. Fourteenth Amendment - Equal Protection

Plaintiffs also assert a Fourteenth Amendment equal protection claim under § 1983.  Where, as here, a plaintiff "does not claim to be a member of a protected class" in the complaint, a plaintiff "may bring an equal protection claim under one of two theories:  selective enforcement or 'class of one.'" Rankel v. Town of Somers, 999 F. Supp. 2d 527, 544 (S.D.N.Y. 2014) (citing Missere v. Gross, 826 F. Supp. 2d 542, 560 (S.D.N.Y. 2011)).

"To state a selective-enforcement claim, a plaintiff must plead:  (1) he was 'treated differently from other similarly situated' individuals and (2) 'that such differential treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'" Id. at 544 (quoting Cine SK8, Inc. v. Town of Henrietta, 507 F.3d 778, 790 (2d Cir. 2007)). See also Best v. New York City Dep't of Corr., 14 F. Supp. 3d 341, 351 (S.D.N.Y. 2014).  As courts in this district have explained, "plaintiffs claiming selective enforcement must compare themselves to individuals [who] are similarly situated in all material respects." Best, 14 F. Supp. 3d at 352 (quoting Mosdos Chofetz Chaim, Inc. v. Village of Wesley Hills, 815 F. Supp. 2d 679, 696 (S.D.N.Y. 2011)).

"Under a class-of-one theory, a plaintiff must allege that he has been 'intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.'" Rankel, 999 F. Supp. 2d at 544 (quoting Analytical Diagnostic Labs, Inc. v. Kusel, 626 F.3d 135, 140 (2d Cir. 2010)); see also Best, 14 F. Supp. 3d at 351-52. In a class-of-one case, "the level of similarity between plaintiffs and the persons with whom they compare themselves must be extremely high" as their "circumstances must be prima facie identical." Best, 14 F. Supp. 3d at 352 (quoting Mosdos Chofetz, 815 F. Supp. 2d at 693).

Plaintiffs do not allege in the complaint that Mr. Zhang was treated differently from others similarly situated. To the contrary, Plaintiffs argue that the Defendants' inability to provide Mr. Zhang with sufficient healthcare was the result of Defendants' failure to adequately train and supervise their employees, agents, and staff in a way that deprived all Rikers Island inmates of their rights. (Compl. ¶¶ 20-26, 106-110, 113-118.) Indeed, Plaintiffs argue that Defendants' acts and omissions were "so persistent and widespread as to constitute policies, customs, and/or practices" that caused not only Mr. Zhang's constitutional and other injuries, but caused the death of several other inmates for want of medical care. (Id. ¶¶ 111, 119-131.)

17

Thus, Plaintiffs have failed to adequately plead the "similarly situated" element required for a Fourteenth Amendment Equal Protection pleading under either a class-of-one or selective enforcement theory and thus this claim is dismissed.

### d. Fourteenth Amendment – Due Process

To adequately plead a claim for violation of Fourteenth Amendment due process, a plaintiff alleging failure to provide medical treatment to a prisoner must show "deliberate indifference to serious medical needs." Ziglar v. Abbasi, 137 S. Ct. 1843, 1864 (2017) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)).

To show deliberate indifference to a pretrial detainee's serious medical needs under Fourteenth Amendment due process, a plaintiff must establish that (1) he suffered a sufficiently serious deprivation of medical care to constitute an objective deprivation of his right to due process (the "objective prong"), and (2) the defendant acted intentionally to impose the deprivation of medical care or recklessly failed to act with reasonable care to mitigate the risk such deprivation caused and that defendant knew, or should have known, that the deprivation of medical care posed an excessive risk to the health or safety

of the pretrial detainee (the "mens rea prong"). Darnell, 849

F.3d at 29, 33-35;[5] see also Lloyd, 246 F. Supp. 3d at 719.

To sufficiently plead the "objective prong," a plaintiff

must establish that they were actually deprived of adequate

medical care. Barnes v. Ross, 926 F. Supp. 2d 499, 505 (S.D.N.Y.

2013). Only "reasonable" medical care is required, and "prison

officials who act reasonably [in response to an inmate-health

risk] cannot be found liable." Salahuddin v. Goord, 467 F.3d

263, 279-80 (2d Cir. 2006) (quoting Farmer v. Brennan, 511 U.S.

825, 845 (1994)). Further, a plaintiff must show that the

inadequacy of the medical care was sufficiently serious. Id. at

280. In cases of temporary delay or interruption of otherwise

adequate medical care, "it's the particular risk of harm faced

by a prisoner due to the challenged deprivation of care, rather

than the severity of the prisoner's underlying medical

condition, considered in the abstract, that is relevant." Sledge

v. Fein, No. 11 Civ. 7450 (PKC), 2013 WL 1288183, at *5

(S.D.N.Y. Mar. 28, 2013) (quoting Smith v. Carpenter, 316 F.3d

178, 186 (2d Cir. 2003)). On the other hand, in cases where a

---

[5] "Although Darnell involved a challenge to conditions of
confinement, the holding of the decision is broad enough to
extend to medical deliberate-indifference claims." Feliciano v.
Anderson, No. 15 Civ. 4106 (LTS), 2017 WL 1189747, at *13
(S.D.N.Y. Mar. 30, 2017); see also Lloyd v. City of New York,
246 F. Supp. 3d 704, 718 (S.D.N.Y. 2017) ("The reasoning of
Darnell applies equally to claims of deliberate indifference to
serious medical needs under the Fourteenth Amendment.")

prisoner alleges denial of adequate medical care, the courts evaluate the seriousness of the detainee's underlying medical condition. <u>Bellotto v. Cnty. of Orange</u>, 248 F. App'x 232, 236 (2d Cir. 2007) (citing <u>Smith</u>, 216 F.3d at 185).  In either case, the medical need—resulting from either the delayed care or the underlying condition itself—must be "a condition of urgency, one that may produce death, degeneration, or extreme pain." <u>Johnson v. Wright</u>, 412 F.3d 398, 403 (2d Cir. 2005) (quoting <u>Hemmings v. Gorczyk</u>, 134 F.3d 104, 108 (2d Cir. 1998)).

Plaintiffs have sufficiently pleaded that Mr. Zhang was actually deprived of adequate medical care.  Plaintiffs have alleged that the medical care Mr. Zhang received was "deficient and resulted in a mismanaged health diagnosis, undiagnosed heart problems, and inadequate management of a seizure disorder." (Compl. ¶ 102.)  Plaintiffs allege that on several occasions, Defendants NYCHHC Does 11-20, Corizon Does 21-30, and other medical professionals failed to take appropriate medical procedures considering his medical condition or failed to connect his symptoms with his medical history. (Compl. ¶¶ 70, 74, 76-79, 81, 83, 86-87, 93, 95-96.)  They allege that Mr. Zhang's death was caused by "not being assessed by a doctor and not being considered for transfer to a hospital" despite his medical history. (Compl. ¶ 103.)  Finally, they allege that but

for this want of medical care and supervision, Mr. Zhang's death may have been prevented. (Compl. ¶ 104.)

Further, Plaintiffs have pleaded that the inadequacy of the medical care was sufficiently serious.  As Plaintiffs are alleging denial of adequate medical care, the Court looks to the seriousness of the detainee's underlying medical condition. Bellotto, 246 F. App'x at 236.  Mr. Zhang's medical condition—hypertension and cardiovascular disease—was sufficiently serious as it may—and indeed did—cause his death. (Compl. ¶¶ 99-101.); see also Johnson, 412 F.3d at 403.

To sufficiently plead the "mens rea prong," a defendant's acts must be "more than merely negligent." Salahuddin, 467 F.3d at 280.  Indeed, "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner" and thus "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim." Feliciano v. Anderson, No. 15 Civ. 4106 (LTS), 2017 WL 1189747, at *13 (S.D.N.Y. Mar. 30, 2017) (quoting Estelle, 429 U.S. at 106).  However, as courts in this circuit have observed, "distinguishing between negligent and reckless medical care is a difficult task, especially at the motion-to-dismiss stage where courts lack the benefit of expert opinion." Richardson v. Corr. Med. Care, Inc., No. 17 Civ. 0420 (MAD), 2018 WL 1580316, at *6 (N.D.N.Y. March 28, 2018) (citing Davis

v. McCready, 283 F. Supp. 2d 108, 121 (S.D.N.Y. 2017)).  The
distinction between the two "comes down to the degree of risk
associated with the negligent treatment." Davis, 283 F. Supp. 2d
at 122 (finding mens rea prong satisfied where medical officer
failed to provide a cane to a detainee who had recently been
shot eight times, despite his obvious struggles to walk and the
excruciating pain he continued to suffer); Richardson, 2018 WL
1580316, at *6 (finding mens rea prong satisfied where medical
officer deprived detainee of medication, did not refer him to a
cardiologist or hospital, and failed to provide any other
treatment despite a history of heart attacks and other health
problems); Smith v. Outlaw, No. 15 Civ. 9961 (RA), 2017 WL
4417699, at *4 (S.D.N.Y. Sept. 30, 2017) (finding mens rea prong
satisfied where a plaintiff with pre-existing heart condition
complained of chest pain and stiffness and numbness in his left
arm and a physician's assistant took no action).

For Plaintiffs to have adequately pleaded the "mens rea
prong" a Defendant must have acted intentionally to deprive Mr.
Zhang of medical care or recklessly failed to act with
reasonable care to mitigate the risk that the deprivation caused
even though the Defendant knew, or should have known, that the
deprivation of medical care Mr. Zhang experienced posed an
excessive risk to his health or safety. Darnell, 849 F.3d at 35.
The Court will examine the allegations as to each Defendant.

22

###### i.   Defendants NYCCO Does 1-10.

Plaintiffs have factually pleaded that on an unspecified number of occasions in June 2015 NYCCO Does 1-10 "did not respond" to Mr. Zhang's complaints of chest pain and that, in March 2016, they denied his requests to go to the emergency room to treat his pain. (Compl. ¶¶ 70, 87.)  However, Plaintiffs have not alleged that NYCCO Does 1-10 intentionally deprived Mr. Zhang of medical care, nor do Plaintiffs allege that NYCCO 1-10 knew or should have known about Mr. Zhang's underlying medical condition.  Without that knowledge, NYCCO Does 1-10 could not have known that denial of medical services posed an excessive risk to Mr. Zhang's health and safety.  Accordingly, Plaintiffs have not met the "mens rea prong" as to NYCCO Does 1-10 and Defendants' motion to dismiss against those Defendants on Fourteenth Amendment due process grounds is granted.

###### ii.  Defendants NYCHHC Does 11-20 and Corizon Does 21-30.

Plaintiffs allege that NYCHHC employees and agents discovered Mr. Zhang's hypertension and coronary heart disease during a routine medical examination at Mr. Zhang's intake and that this information was known to the Defendants. (Id. ¶¶ 69, 79, 110.)  Plaintiffs allege that Mr. Zhang complained of chest and back pains starting no later than June 9, 2015 and, from at least December 2015, the pain was sufficient to deprive Mr. Zhang of sleep and cause other inmates to wake up from his cries

23

of pain. (Id. ¶¶ 71, 82.)  In addition to back and chest pain,
Mr. Zhang started experiencing pain in his left shoulder
sometime in January 2016, first bringing it to Defendants'
attention on February 15, 2016. (Id. ¶ 84.)  By March 2016, Mr.
Zhang would often wake from the shoulder and chest pains
"screaming and yelling" enough to wake fellow inmates. (Id. ¶
87.)  Mr. Zhang thus experienced serious recurring chest and
back pain for just over ten months, and chest, back, and left
shoulder pain for at least two and a half months before his
April 18, 2016 death.  (Id. ¶ 67.)  During this time, Plaintiffs
alleged that Defendants saw him on no fewer than fifteen
occasions; at least five times at his request and at least three
due to medical emergencies. (Id. ¶¶ 69-72, 74, 76-81, 83, 84,
86, 91, 101.)  Yet, during the ten months he complained, Mr.
Zhang's symptoms did not recede—indeed, they worsened—and his
pain stayed sufficiently severe to cause numerous complaints and
deprive him and those around him of sleep.  At no point in this
ten-month period did Defendants allow Mr. Zhang to be sent to
the hospital or refer him to a cardiologist or any other type of
specialist.  Considering the length of Mr. Zhang's condition,
that he developed new symptoms over time, that he was not
provided any real relief from pain, that Mr. Zhang experienced
medical emergencies no fewer than three times, that Mr. Zhang
repeatedly requested and was denied hospital care, and that

Defendants were aware of his medical history of hypertension and coronary disease during this entire period, Defendants' failure to refer Mr. Zhang to a hospital or specialized care plausibly constituted a reckless failure to act with reasonable care. See Davis, 283 F. Supp. 3d at 122-23; Smith, 2017 WL 441699, at *5. Further, Plaintiffs have established that Defendants plausibly knew or should have known that this deprivation constituted high risk to Mr. Zhang's health and safety. Plaintiffs have thus met the standard for the mens rea prong. With respect to Defendants NYCHHC Does 11-20 and Corizon Does 21-30 Plaintiffs have adequately pleaded deliberate indifference to Mr. Zhang's Fourteenth Amendment due process rights as to these Defendants.

### iii. Defendants City of New York, New York City Department of Corrections, Rikers Island Facilities, NYCHHC, and Corizon (the "Municipal Defendants")

To hold a municipality liable under § 1983 for the unconstitutional acts of its employees, "a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." Wray v. City of New York, 490 F.3d 189, 195 (2d Cir. 2009) (internal quotation marks and citations omitted).[6] There are four ways a plaintiff can allege

---

[6] Although a private entity, Corizon is the functional equivalent of a municipality in this context as it provided medical care in prisons, a role traditionally within the exclusive prerogative of the state. See Grimmett v. Corizon Med. Assocs. of New York,

such a policy or custom:  (1) "the existence of a formal policy
officially endorsed by the municipality," (2) "actions taken or
decisions made by municipal officials with final decision making
authority, which caused the alleged violation of plaintiff's
civil rights," (3) "a practice so persistent and widespread that
it constitutes a custom of which constructive knowledge can be
implied on the part of the policymaking officials," or (4) "a
failure by policymakers to properly train or supervise their
subordinates, amounting to 'deliberate indifference' to the
rights of those who come in contact with municipal employees."
Betts v. Rodriquez, No. 15 Civ. 3836 (JPO), 2016 WL 7192088, at
*5 (S.D.N.Y. Dec. 12, 2016) (quoting Guzman v. United States,
No. 11 Civ. 5834 (JPO), 2013 WL 5018553, at *3 (S.D.N.Y. Sept.
13, 2013)).  Further, plaintiff "must give a factual description
of such a policy, not just bald allegations that such a thing
existed." Bess, 2013 WL 1164919, at *2.  Additionally, a
Plaintiff must "sufficiently connect[] this alleged policy to
his alleged deprivation of constitutional rights." Betts, 2016
WL 7192088, at *5.

    Here, Plaintiffs have adequately pleaded that there was an
"official policy or custom."  Plaintiffs point to a 2014 New

---

No. 15 Civ. 7351 (JPO) (SN), 2017 WL 2274485, at *5 (S.D.N.Y.
May 24, 2017); Bess v. City of New York, No. 11 Civ. 7604 (TPG),
2013 WL 1164919, at *2 (S.D.N.Y. Mar. 19, 2013).

York State Commission of Corrections ("NYSCOC") report that
detailed the inadequate medical services available to Rikers
Island detainees and linked these conditions with at least two
inmate deaths and point to another report detailing a third
inmate's 2013 death under similar circumstances. (Compl. ¶¶ 119-
121, 132, 133, 155.)  Plaintiffs further allege additional
reports, media coverage, and publicity regarding the "systematic
general and health care deficiencies and failure" and general
poor conditions at Rikers. (Compl. ¶¶ 106, 108, 118, 152.)  The
Plaintiffs allege that these reports and a flurry of successful
lawsuits against NYCHHC and Corizon put the Municipal Defendants
on notice that the types of deprivations that allegedly caused
Mr. Zhang's death were happening at Rikers.  (Compl. ¶¶ 12, 108,
116, 149, 152, 153.)  Nevertheless, Municipal Defendants ignored
these warnings and recommendations or made inadequate efforts to
provide inmates with acceptable treatment. (Compl. ¶¶ 12, 107,
116, 151, 154.)  As such, Plaintiffs sufficiently allege a
"practice so persistent and widespread that it constitutes a
custom of which constructive knowledge can be implied on the
part of the policymaking officials" to adequately plead an
official policy or custom on the part of the Municipal
Defendants.  Additionally, they have adequately pleaded a causal
link between the inaction or ineffective response on the part of
Municipal Defendants and the continuation of the medical

27

conditions that allegedly led to the violation of Mr. Zhang's
Fourteenth Amendment due process rights.  See Bishop v. City of
New York, No. 13 Civ. 9203 (AJN), 2016 WL 4484245, at *4
(S.D.N.Y. Aug. 18, 2016) (holding that plaintiff's pleading
citing statistics, the reports of whistleblowers, and a federal
court finding as to NYPD's policy and practice of suspicionless
stop and frisk was sufficient to plead municipal liability in a
§ 1983 claim); Kucharczyk v. Westchester City, 95 F. Supp. 3d
529, 544 (S.D.N.Y. 2015) (complaint accompanied by Department of
Justice report identifying widespread practice was sufficient to
plausibly allege a § 1983 claim).  Accordingly, Defendants'
motion to dismiss Plaintiffs' § 1983 claims as to the Municipal
Defendants is denied.

### iv.  Defendants Mayor de Blasio, Mr. Ponte, Dr. Raju, Dr. Yang, and Mr. Witty

Under a § 1983 claim, an individual may be held liable only
if that individual is "personally involved in the alleged
deprivation." Littlejohn v. City of New York, 795 F.3d 297, 314
(2d Cir. 2015).  Because vicarious liability is inapplicable in
a § 1983 suit, "a plaintiff must plead that each Government-
official defendant, through the official's own individual
actions, has violated the constitution." Id. at 314 (quoting
Iqbal, 556 U.S. at 676 (2009)).  Such personal involvement may
be established by showing that:  (1) "the defendant participated

28

directly in the alleged constitutional violation," (2) "the
defendant, after being informed of the violation through a
report or appeal, failed to remedy the wrong," (3) "the
defendant created a policy or custom under which
unconstitutional practices occurred, or allowed the continuance
of such a policy or custom," (4) "the defendant was grossly
negligent in supervising subordinates who committed the wrongful
acts," or (5) "the defendant exhibited deliberate indifference"
by failing to act on information that unconstitutional acts were
occurring. Id. at 314 (quoting Back v. Hastings on Hudson Union
Free Sch. Dist., 365 F.3d 107, 127 (2d Cir. 2004)).

**Mayor de Blasio.**  Plaintiffs argue that they have
sufficiently alleged Mayor de Blasio's liability by pleading
that he "(1) allowed the continuance of such an unconstitutional
policy or custom" and "(2) exhibited deliberate indifference to
the rights of [Mr. Zhang] by failing to act on information
indicating that unconstitutional acts were occurring." (Pls.'
Mem. of L. in Opp'n to Defs.' Mot. to Dismiss at 20 [hereinafter
"Pls.' Mem."])  However, Plaintiffs argue only that (1) it was
"plausible" that Mayor de Blasio was advised to close down
Rikers Island, but opted to let it continue to operate and (2)
it is "plausible to infer" that Mayor de Blasio exhibited
deliberate indifference to the need for more and better
supervision to protect against constitutional violations. (Id.

at 20-21 (citing Compl. ¶¶ 114-115, 161).)  Such allegations
fall short of the factual specificity necessary to adequately
plead the Mayor's personal involvement.  As such, Plaintiffs
have failed to adequately plead Mayor de Blasio's § 1983
liability and Defendants' motion to dismiss as to Defendant
Mayor de Blasio is granted.

**Mr. Ponte.**  Plaintiffs argue that Mr. Ponte "(1) allowed
the continuance of" an unconstitutional policy or custom and
"(2) exhibited deliberate indifference to the rights of [Mr.
Zhang] by failing to act on information indicating that
unconstitutional acts were occurring." (Id. at 21 (citing Compl.
¶¶ 113-137, 151-157).)  Plaintiffs state that "[i]t is unclearly
[sic] whether . . . [Mr. Ponte] ever fulfilled his duties" to
investigate the causes of deaths of other inmates to implement
changes to the medical care at Rikers Island. (Compl. ¶ 135.)
However, nowhere in the complaint do Plaintiffs allege the types
of factual assertions that would substantiate either of these
arguments or satisfy the pleading requirement that Mr. Ponte was
personally involved in the deprivation.  As such, Defendants'
motion to dismiss as to Defendant Mr. Ponte is granted.

**Dr. Raju, Mr. Witty, and Dr. Yang.**  Plaintiffs allege that
Dr. Raju, Mr. Witty, and Dr. Yang "(1) created a policy or
custom under which unconstitutional practices occurred and
allowed the continuance of such a policy or custom" and "(2)

exhibited deliberate indifference to the rights of [Mr. Zhang],
the decedent, by failing to act on information indicating that
the unconstitutional acts were occurring." (Id. at 23 (citing
Compl. ¶¶ 14-26, 104-37, 138-49, 151-57).)  However, Plaintiffs
have failed to plead facts sufficient to allege Dr. Raju, Mr.
Witty, or Dr. Yang's personal involvement in the deprivation.
As such, Defendants' motion to dismiss as to Dr. Raju, Mr.
Witty, and Dr. Yang is granted.

### e. Count 4: ADA & Rehabilitation Act

Plaintiffs also bring claims for violations of Title II of
the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131
et seq. and § 504 of the Rehabilitation Act of 1973, 29 U.S.C. §
794a(a). (Compl. ¶¶ 190-193.)

To state a claim under Title II of the ADA, a plaintiff
must allege (1) that they are a "qualified individual" with a
disability, (2) that they were "excluded from participation in a
public entity's services, programs, or activities or [were]
otherwise discriminated against by a public entity," and (3)
"that such exclusion or discrimination was due to [their]
disability." Varney v. Many, No. 13 Civ. 5285 (VB), 2015 WL
1730071, at *3 (S.D.N.Y. Apr. 14, 2015) (citing Hargrave v.
Vermont, 340 F.3d 27, 34-35 (2d Cir. 2003)).  "Courts routinely
dismiss ADA suits by disabled inmates that allege inadequate
medical treatment, but do not allege that the inmate was treated

differently because of his or her disability." <u>Elbert v. New York State Dep't of Corr. Servs.</u>, 751 F. Supp. 2d 590, 595 (S.D.N.Y. 2010) (citing seven decisions with this holding).

Similar to the ADA standard, to plead a case under the Rehabilitation Act "a plaintiff must allege: (1) that he or she is a person with disabilities under the Rehabilitation Act, (2) who has been denied benefits of or excluded from participating in a federally funded program or special service, (3) solely because of his or her disability." <u>Bryant v. New York State Educ. Dep't</u>, 692 F.3d 202, 216 (2d Cir. 2012).

Plaintiffs have not alleged that Mr. Zhang received disparate medical treatment due to a disability. Thus, they have not adequately pleaded claims under the ADA or the Rehabilitation Act. Accordingly, Defendants' motion to dismiss ADA and Rehabilitation Act claims is granted.

## B. State Law Claims

### 1. Count 1:  New York Constitution

Plaintiffs allege that "Defendants intentionally, outrageously, negligently, and recklessly disregarded [Mr. Zhang's] rights afforded to him under the . . . New York State Constitution[]." (Compl. ¶ 175.) The New York State Constitution only provides a private right of action where remedies are otherwise unavailable at common law or federally through 42 U.S.C. § 1983. <u>Allen v. Antal</u>, 665 F. App'x 9, 13 (2d

32

Cir. 2016) (citing <u>Brown v. State of New York</u>, 89 N.Y.2d 172, 192 (1996)).  As alternative remedies are available to Plaintiffs under both § 1983 and New York common law, Plaintiffs have no private right of action to such a claim.  Accordingly, Defendants' motion to dismiss this New York constitutional claim is granted.

### 2. Counts 2 & 5:  Wrongful Death & Negligence and Malpractice

Defendants concede that they are not challenging the adequacy of Plaintiffs' wrongful death and negligence and malpractice claims. (Defs.' Mem. at 6.)  Thus, Defendants' motion to dismiss as to these claims is denied.

### 3. Count 3:  Loss of Society, Service, & Parental Guidance

Plaintiffs bring claim for the "loss of society, service, and parental guidance" as either a single or separate claims under New York law. (Compl. ¶¶ 186-189.)  However, no such claims exist under New York law.  "Loss of services" and "loss of parental guidance" are both elements of "pecuniary loss" to which a plaintiff may be entitled in a "wrongful death" action, not claims in and of themselves. <u>Huthmacher v. Dunlop Tire Corp.</u>, 765 N.Y.S.2d 111, 113 (4th Dep't 2003).  Even if the Court were to construe this as a wrongful death claim, such a pleading would be duplicative as Plaintiffs have already pleaded a wrongful death claim.

33

Further, under New York law, "loss of society" is merely a part of a "loss of consortium" claim. Mann v. United States, 300 F. Supp. 3d 411, 422 (N.D.N.Y. 2018). Even if the Court were to construe this as a claim based on Mr. Zhang's sons' loss of parental consortium, New York law does not recognize a cause of action for such a claim. In re Asbestos Litigation, 986 F. Supp. 761, 771 (S.D.N.Y. 1997) (citing DeAngelis v. Lutheran Medical Center, 84 A.D.2d 17, 27 (2d Dep't 1981)).

Accordingly, Defendants' motion to dismiss as to loss of society, service, and parental guidance is granted.

### 4. Count 6:  Duty to Supervise & Train

Plaintiffs bring a claim for Defendants' duty to supervise and train employees. (Compl. at 46)  The Court interprets this as a claim for "negligent supervision" under New York law.  To state such a claim, in addition to the elements of negligence, " a plaintiff must show:  (1) that the tort-feasor and the defendant were in an employee-employer relationship, (2) that the employer knew or should have known of the employee's propensity for the conduct which caused the injury prior to the injury's occurrence, and (3) that the tort was committed on the employer's premises or with the employer's chattels." Green v. City of Mount Vernon, 96 F. Supp. 3d 263, 297 (S.D.N.Y. 2015) (quoting Ehrens v. Lutheran Church, 385 F.3d 232, 235 (2d Cir. 2004)).

Here, Plaintiffs fail to allege any facts which would plausibly state that the Defendant employers knew or should have known of their employees'—in this case NYCCO Does 1-10, NYCHHC Does 11-20, and Corizon Does 21-30—propensity for the conduct which caused Mr. Zhang's injury prior to its occurrence. Plaintiffs merely allege general statements regarding how "an abundance of adverse media coverage and publicity" as to Rikers Island's general deficiencies in medical and health care that should have put the employers on notice. (Compl. ¶¶ 152-153.) However, this falls short of alleging facts regarding the level of awareness of these employees' propensities that the second prong of a negligent supervision claim requires.  Accordingly, Defendants' motion to dismiss Plaintiffs' negligent supervision claim is granted.

### 5. Count 7:  Intentional & Negligent Infliction of Emotional Distress

Defendants argue that, under New York state law, intentional infliction of emotional distresses and negligent infliction of emotional distress are theories of recovery that are to be invoked only where other tort remedies are not available. (Defs.' Mem. at 20-21 (citing Deronette v. City of New York, No. 05 Civ. 5275 (SJ), 2007 WL 951925, at *5 (E.D.N.Y. Mar. 27, 2007)).  Indeed, "no such claims will lie where the conduct underlying the claims falls within the ambit of

traditional tort liability." Id. at 210; see also Salmon v.
Blesser, 802 F.3d 249, 256 (2d Cir. 2015) ("[U]nder New York
law, an intentional infliction tort may 'be invoked only as a
last resort' . . . 'to provide relief in those circumstances
where traditional theories of recovery do not'" (quoting Turley
v. ISG Lackawanna, Inc., 774 F.3d 140, 158 (2d Cir. 2014);
Sheila C. v. Povich, 11 A.D.2d 120, 130 (1st Dep't 2004)
(respectively))); Deronette, 2007 WL 951925, at *6 ("[a] claim
for negligent infliction of emotional distress should be
dismissed where the conduct for the underlying claim may be
redressed by law of traditional tort remedies." (citing Druschke
v. Banana Republic, Inc., 359 F. Supp. 2d 308, 315 (S.D.N.Y.
2005))).

Here, the conduct alleged in Plaintiffs' complaint is
clearly encompassed in Plaintiffs' tort claims for wrongful
death and negligence and malpractice.  Therefore, other tort
remedies are still available to the Plaintiffs and these claims
cannot be pleaded under New York law.  Accordingly, Defendants'
motion to dismiss Plaintiffs' claims for intentional and
negligent infliction of emotional distress claims is granted.

### 6. Count 8:  Fraudulent Concealment

Under New York law, to state a prima facie claim for fraud,
"a complaint must allege misrepresentation or concealment of a
material fact, falsity, scienter on the part of the wrongdoer,

justifiable reliance, and resulting injury." Basis Yield Alpha
Fund (Master) v. Goldman Sachs Grp., Inc., 115 A.D.3d 128, 135
(N.Y. 2014) (citing Dembeck v. 220 Cent. Park S., LLC, 33 A.D.3d
491, 492 (1st Dep't 2006)).

Here Plaintiffs have failed to plead justifiable reliance.
Plaintiffs have only alleged that Mr. Zhang's sons "justifiably
relied on the Defendants' lie of omission in believing" there
was a lack of untoward circumstances surrounding Mr. Zhang's
death. (Compl. ¶ 219.)  The complaint offers no factual details
of this reliance whatsoever.  As such, Plaintiffs have failed to
adequately plead fraudulent concealment. Iqbal, 556 U.S. at 678
(holding a claim offering naked assertions without "further
factual enhancement" will not survive a motion to dismiss).

### Leave to Amend

Plaintiffs have requested leave to amend. (Pls.' Mem. at
2.)  Rule 15 of the Federal Rules of Civil Procedure instructs
courts to "freely give leave" to amend "when justice so
requires." Fed. R. Civ. P. 15(a)(2).  However, amendment "is not
warranted absent some indication as to what [a plaintiff] might
add to [its] complaint in order to make it viable." Shemian v.
Research In Motion Ltd., 570 F. App'x 32, 37 (2d Cir. 2014).

Accordingly, Plaintiffs' Fifth Amendment; Eighth Amendment;
New York constitutional; loss of society, services, and parent
guidance; and intentional and negligent infliction of emotional

37

distress claims are dismissed with prejudice.  Plaintiffs'
Fourteenth Amendment equal protection; Fourteenth Amendment due
process (as to NYCCO Does 1-10, Mayor de Blasio, Mr. Ponte, Dr.
Raju, Dr. Yang, and Mr. Witty); ADA; Rehabilitation Act;
negligent supervision; and fraudulent concealment claims are
dismissed without prejudice.

Should Plaintiffs wish to amend their complaint as to any
dismissed claim, they must demonstrate how they will cure the
deficiencies in their claims and that justice requires granting
leave to amend.  Such demonstration shall be filed within 30
days of the date of this Opinion.

**Conclusion**

For the reasons stated above, Defendants' motion is GRANTED
in part, and DENIED in part.

Defendants' motion to dismiss Plaintiffs' Fifth Amendment;
Eighth Amendment; New York constitutional; loss of society,
services, and parent guidance; and intentional and negligent
infliction of emotional distress claims is GRANTED with
prejudice.

Defendants' motion to dismiss Plaintiffs' Fourteenth
Amendment equal protection; Fourteenth Amendment due process (as
to NYCCO Does 1-10, Mayor de Blasio, Mr. Ponte, Dr. Raju, Dr.
Yang, and Mr. Witty); ADA; Rehabilitation Act; negligent

supervision; duty to supervise and train employees and staff claims is GRANTED without prejudice.

Defendants' motion to dismiss Fourteenth Amendment due process claims against NYCHHC Does 11-20, Corizon Does 21-30, and Municipal Defendants is DENIED.

Defendants' motion to dismiss wrongful death and negligence and malpractice claims is DENIED.

The Clerk of Court is respectfully directed to terminate the motion docketed at ECF No. 62.

**SO ORDERED.**

Dated:       New York, New York
             June 28 , 2018

                                                                           John F. Keenan
                      United States District Judge