**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------x

MAN ZHANG and CHUNMAN ZHANG,
individually, and as Administrators of the
Estate of ZHIQUAN ZHANG,

                     Plaintiffs,

          -against-

THE CITY OF NEW YORK, et al.,

                  Defendants.

-----------------------------------------------------------x

:
:
:
:
:
:
:
:
:
:
:
:

17-CV-5415 (JFK) (OTW)

**OPINION & ORDER**

       **ONA T. WANG, United States Magistrate Judge:**

**I.    Introduction**

      Plaintiffs Man Zhang and Chunman Zhang, individually and as Administrators of the

estate of Zhiquan Zhang ("Mr. Zhang") (collectively, the "Plaintiffs") bring this action against

Defendants the City of New York; the New York City Department of Correction ("NYCDOC");

Rikers Island Facilities; New York City Health and Hospitals Corporation ("NYCHHC"); Corizon

Health, Inc. ("Corizon"); Bill de Blasio; Joseph Ponte; Ram Raju; Patsy Yang; Karey Witty; and

various employees of NYCDOC, NYCHHC, and Corizon (collectively, the "Defendants"), for

constitutional violations under 42 U.S.C. § 1983, wrongful death, and related claims arising from

Mr. Zhang's death while in pretrial detention at Rikers Island prison. Mr. Zhang suffered from

hypertension and coronary heart disease. (Compl. ¶¶ 68-69). Plaintiffs allege that Mr. Zhang

repeatedly complained to correction officers and sought treatment for chest pain; however,

Defendants did not provide Mr. Zhang with adequate medical care, leading to his death on April 18, 2016 of "hypertensive and atherosclerotic cardiovascular disease." (*Id.* ¶ 101).

Presently before the Court is Plaintiffs' Motion for Sanctions for alleged spoliation of evidence. (ECF 183). Specifically, Plaintiffs seek spoliation sanctions for Defendants' failure to preserve three categories of documents and information: 1) "documents of bed numbers, bed charts with numbers and the inmate's logbook" ("inmate location information"); 2) video surveillance footage; and 3) telephone recordings. Plaintiffs also seek sanctions because a correction officer failed to appear for her deposition. Plaintiffs request, in the alternative, (1) "an adverse influence," which appears to be a request for the Court to strike Defendants' pleadings and to enter a default judgment; or (2) an adverse inference instruction. Plaintiffs also seek costs and attorneys' fees. For the reasons set forth below, Plaintiffs' motion is **GRANTED** to the extent it seeks attorneys' fees and costs. Plaintiffs' request for entry of a default judgment or an adverse inference instruction is **DENIED**.

## II.      Background

### A.      Factual and Procedural History

Mr. Zhang was a 61-year-old man incarcerated at Rikers Island prison while awaiting trial. On April 18, 2016, Mr. Zhang went into cardiac arrest and died. Mr. Zhang's two sons bring this action as administrators of their father's estate, alleging that their father died as a result of inadequate medical care during his year of pretrial detention. Plaintiffs filed the instant motion seeking sanctions for Defendants' alleged failure to preserve inmate location information, video surveillance footage, and telephone recordings. Plaintiffs argue that Defendants had a duty to

preserve these items, such that Defendants' failure to impose a litigation hold before they were destroyed entitles Plaintiffs to spoliation sanctions.

### 1. Pleadings and Defendants' Motion to Dismiss

The Court assumes familiarity with the facts as recounted in the Honorable John F. Keenan's Opinion and Order on Defendants' motion to dismiss. (ECF 126). Defendants filed their motion to dismiss on October 31, 2017. (ECF 37). Discovery proceeded during the pendency of the motion to dismiss, except that on June 5, 2018, this Court granted Defendants' motion to bifurcate discovery related to Plaintiffs' *Monell* claims, and to stay *Monell* discovery pending resolution of Plaintiffs' underlying claims. (ECF 118).[1]

### 2. Discovery Disputes Arise Regarding Plaintiffs' Amended Requests for Production of Documents and Defendants' Responses

This matter was referred to Magistrate Judge Andrew J. Peck for general pretrial management, and referred to me upon Judge Peck's retirement in early March 2018. (ECF 32). From January 2018 to the filing of the instant motion in January 2019, the parties litigated several discovery disputes—many of which had been discussed and resolved—before Judge Peck and me. The parties' current dispute is about three categories of information: (1) documents showing inmate location information in the form of "documents of bed numbers, bed charts with numbers and the inmate's logbook," which Plaintiffs assert is necessary to help them identify potential witnesses; (2) video surveillance footage of Mr. Zhang's housing unit for

---

[1] Judge Keenan granted in part and denied in part Defendants' motion to dismiss on June 28, 2018. (ECF 126). The decision on the motion to dismiss did not affect the scope of discovery addressed in this motion.

dates on which Mr. Zhang allegedly complained to correction officers of chest pain during the night; and (3) telephone recordings between Mr. Zhang and his family and friends.

On May 1, 2018, this Court held a discovery conference at which the Court addressed, *inter alia*, Plaintiffs' requests for documents showing inmate location information, video surveillance footage, and telephone recordings.[2] The Court noted its concern with Defendants' compliance with their discovery obligations, including their decision not to investigate whether certain responsive documents exist, while at the same time representing that Defendants were "not in possession of any documents responsive to this request." (*See* Transcript of May 1, 2018 Conference (ECF 110), at 50:8-25; 51:1-4; 53-54). The Court thus directed Defendants to review their responses, identify the requests they had not yet investigated, and modify their responses accordingly. (*Id.* at 54). The Court also ordered Plaintiffs to narrow certain of their discovery requests, including the request for video surveillance footage. (*Id.* at 98).

In a letter filed on June 1, 2018, Plaintiffs' counsel represented that Defendants had failed to produce the requested video surveillance footage and phone recordings. (*Id.*). Plaintiffs had represented that they needed video surveillance footage to show that Mr. Zhang reported pain and suffering to correction officers during the night but was made to wait until morning for treatment. (*See* Transcript of May 1, 2018 Conference (ECF 110), at 68-71). Plaintiffs' counsel had chosen six time periods when Mr. Zhang might have sought the assistance of a correction officer for chest pain during the night. As to the telephone recordings,

_____

[2] References to later discovery conferences will discuss only the three categories of documents relevant to this sanctions motion.

Plaintiffs argue that the recordings between Mr. Zhang and his family members and friends "could have revealed that [Mr.] Zhang complained about Defendants' deliberate indifference to his life-threatening illness." (*See* Plaintiffs' Memo of Law (ECF 185) at 11).

Defendants responded on June 4, 2018, arguing, in relevant part: 1) an investigation was ongoing for documents showing inmate location information; and 2) Defendants provided Plaintiffs' counsel with the video surveillance from Mr. Zhang's death on April 18, 2016, but had no obligation to "preserve and keep" prior video surveillance or telephone recordings. (ECF 116).

On June 5, 2018, this Court directed Defendants to produce to Plaintiffs "the documents of bed numbers, bed charts with numbers" and the head count logbook in the areas of the prison where Mr. Zhang lived during his period of incarceration, or, in the alternative, to provide Plaintiffs with a sworn statement explaining how documents reflecting inmate bed location were maintained by the prison, including any policies related to their retention and destruction, and which explained why the requested categories of documents could not be produced. (ECF 118).

Similarly, the Court directed Defendants to produce to Plaintiffs the "Video Surveillance Footage and/or tapes, including electronic files and other data" from the dormitories where Mr. Zhang was housed during the six time periods identified in Plaintiffs' June 1, 2018 letter, and "all phone recordings made by and between [Mr. Zhang] and his family and friends," also referenced in Plaintiffs' June 1, 2018 letter, or, if this material no longer existed, to provide Plaintiffs with a sworn statement to that effect, identifying (a) the date of their destruction and circumstances under which they were destroyed, (b) the efforts that were made to preserve

and/or recover them, and when and by whom these efforts were made, (c) the document

retention and destruction policies under which they were destroyed, and (d) whether any

litigation hold was issued by the Defendants with respect to these documents. (*Id.*).

3. **Defendants Represent that Specific Documents Relating to Inmate Bed Assignments Do Not Exist, and Defendants Did Not Preserve the Video Surveillance Footage or Telephone Recordings**

In a June 18, 2018 letter, Defendants affirmed that any documents relating to bed

numbers or bed charts with numbers for April 2015 – April 2016 no longer existed. (ECF 120).

Defendants also maintained that a "Head Count Logbook" did not exist. (*Id.*). Defendants

explained that officers are not obligated to record inmate bed numbers in the housing unit log

book but that it is possible some officers did so. (*Id.*). Defendants would have to search through

the archived housing unit log books from 2015 and 2016 to determine whether there is any

mention of inmates' bed numbers. (*Id.*). Thus, Defendants requested that Plaintiffs narrow their

demand to specific dates and times. (*Id.*).

Plaintiffs responded by arguing that Defendants should be required to search through

the archived log books. (ECF 121). Plaintiffs also informed the Court that Defendants had

provided two sworn statements regarding the video surveillance and telephone recording

document requests indicating that neither had been preserved. (*Id.*).

The Court then ordered the parties to meet and confer to resolve these issues and to raise any disputed issues in a joint letter to be filed one week before the July 12, 2018 conference. (ECF 124).[3]

At the discovery conference on July 12, 2018, the Court directed, *inter alia*, Defendants to produce unredacted logbooks for the housing areas that housed Mr. Zhang for the following dates and date ranges: June 9, 2015, June 10, 2015, July 6, 2015, September 5, 2015, September 7, 2015, September 13, 2015, October 20, 2015, November 12, 2015, November 13, 2015, the first week of December 2015, January 14, 2016, February 15,2016, February 22, 2016, March 1, 2016 through March 10, 2016, March 14, 2016, March 17, 2016, March 24, 2016, and April 18, 2016. (Transcript of July 12, 2018 Conference, at 17-19).

On August 14, 2018, the parties submitted a joint letter in advance of the next discovery conference. (ECF 138). Defendants had found and produced log books covering the requested July – December 2015 and April 2016 dates, but the remaining log books (for June 2015 and January 2016 – March 2016) could not be located. (*Id.*).

---

[3] On July 6, 2018, Defendants filed a letter outlining disputes to be discussed at the July 12, 2018 conference. (ECF 127). Defendants' letter detailed their attempts to meet and confer with Plaintiffs' counsel and represented that Plaintiffs' counsel had not provided his portion of the joint letter to Defendants. (*Id.*). Defendants identified "headcount log books" as an issue to be discussed at the conference, reiterating their stance (first outlined in ECF 120 dated June 18, 2018) that Plaintiffs should narrow their demand. (*Id.*). Plaintiffs filed a letter that same day. (ECF 128). On July 11, 2018, the Court issued an order notifying the parties that the Court would not consider the issues raised in Plaintiffs' letter at the upcoming discovery conference due to Plaintiffs' counsel's failure to timely meet and confer with Defendants. (ECF 129).

#### 4. Discovery Closes; Parties Discuss Spoliation Motion

Discovery closed on September 28, 2018. (ECF 160, 166). In a September 28, 2018 status letter (which Defendants again submitted without Plaintiffs' portion because of counsel's delay in providing it),[4] Defendants represented that they had produced to Plaintiffs "control room log books" for the RNDC facility, but that they could not locate similar materials for the VCBC facility.[5] (ECF 161). Thus, on November 5, 2018, the Court directed the parties to meet and confer and provide a proposed briefing schedule on Plaintiffs' contemplated spoliation motion by December 7, 2018. (ECF 176). This motion then followed. (ECF 183, 187, 189).

### III. Discussion

#### A. This Court's Authority

Pretrial matters "not dispositive of a party's claim or defense" may be referred to a magistrate judge for hearing and decision, subject to review, if timely objections are filed, by the district judge on a "clearly erroneous" or "contrary to law" standard. Fed. R. Civ. P. 72(a); *see also* 28 U.S.C. § 636(b)(1)(A). "Discovery motions, including those seeking sanctions . . . , are ordinarily considered non-dispositive, and therefore fall within the grant of Rule 72(a), unless the sanction deployed disposes of a claim [or defense]." *Seena Int'l, Inc. v. One Step Up, Ltd.*, No. 15-CV-01095 (PKC) (BCM), 2016 WL 2865350, at *10 (S.D.N.Y. May 11, 2016) (quoting *Lan v. Time Warner, Inc.*, No. 11-CV-2870 (AT) (JCF), 2016 WL 928731, at *1 (S.D.N.Y. Feb. 9, 2016)

---

[4] Plaintiffs' letter, which was filed that same day, did not add any position regarding the "control room log books." (ECF 162). Nor did Plaintiffs provide a proposed briefing schedule for a spoliation motion, as the Court had previously directed.
[5] RNDC and VCBC facilities are dormitories where Mr. Zhang had been housed.

(internal citations omitted)). "The critical issue . . . is what sanction the magistrate judge actually imposes, not what sanction the moving party seeks." *Syntel Sterling Best Shores Mauritius Ltd. v. TriZetto Group*, 328 F.R.D. 100, 118 (S.D.N.Y. 2018) (quoting Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, *Federal Practice and Procedure* § 3068.2, at 383 (Thomson Reuters 2014)). For reasons discussed below, this Court does not find that case-dispositive sanctions are warranted; thus, this Court has the authority to impose them pursuant to Rule 72(a).

## B.    Legal Standards

"Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *West v. Goodyear Tire & Rubber Co.,* 167 F.3d 776, 779 (2d Cir.1999).

Rule 37(e) of the Federal Rules of Civil Procedure, amended in 2015, governs sanctions for failure to preserve ESI, and provides as follows:

(e) **Failure to Preserve Electronically Stored Information.** If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:

(1)    Upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or

(2)    Only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:

(A)    Presume that the lost information was unfavorable to the party;

(B)    Instruct the jury that it may or must presume the information was unfavorable to the party; or

       (C)      Dismiss the action or enter a default judgment.

Fed. R. Civ. P. 37(e).

Pursuant to Rule 37(e), Plaintiffs must show that Defendants "acted with the intent to deprive [Plaintiff] of the information's use in the litigation" before the sanctions listed in subsection (2) of Rule 37(e)—i.e., adverse inference, dismissal, or default judgment—are available. Fed. R. Civ. P. 37(e)(2). Absent a showing of "intent to deprive," Plaintiffs' relief is limited to sanctions under subsection (1) of Rule 37(e). Fed. R. Civ. P. 37(e)(2). Before the 2015 amendment of Rule 37(e), a court had discretion to impose sanctions—even the more serious sanctions now enumerated in Rule 37(e)(2)—for negligent spoliation of ESI. *See Residential Funding Corp. v. DeGeorge Financial Corp.*, 306 F.3d 99, 107 (2d Cir. 2002).

The traditional spoliation standards found in *Residential Funding* still apply to non-ESI evidence. Pursuant to *Residential Funding*, a party seeking an adverse inference instruction is required only to demonstrate:

> "(1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed with a culpable state of mind; and (3) that the destroyed evidence was 'relevant' to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense."

306 F.3d 99, 107 (2d Cir. 2002); *see also Arista Records LLC v. Usenet.com, Inc.*, 608 F. Supp. 2d 409, 430 (S.D.N.Y. 2009) (expanding *Residential Funding Corp.* to sanctions other than adverse inference instructions). Under this standard, a court has discretion to sanction a party for even negligent spoliation. *See Residential Funding Corp.*, 306. F.3d at 108. Thus, the biggest change

the amendments to Rule 37(e) made for ESI was to replace the "culpable state of mind" element under *Residential Funding Corp.* with the more stringent "intent to deprive."

The 2015 amendments to Rule 37(e) did not otherwise significantly modify the traditional elements for spoliation sanctions. The moving party must still demonstrate that the spoliating party "had an obligation to preserve [the evidence] at the time it was destroyed." *Byrnie v. Town of Cromwell, Bd. Of Educ.*, 243 F.3d 93, 107 (2d Cir. 2001); *see* Fed. R. Civ. P. 37(e) (requiring a showing that the lost ESI "should have been preserved in the anticipation or conduct of litigation" and was "lost because a party failed to take reasonable steps to preserve it"). The amendments to Rule 37(e) thus "incorporat[e] the [common law] requirements of duty and breach." *Ungar v. City of New York*, 329 F.R.D. 8, 13 (E.D.N.Y. 2018); *see* Fed. R. Civ. P. 37(e)(2), Advisory Committee Note, 2015 Amendment ("Rule 37(e) is based on this common-law duty; it does not attempt to create a new duty to preserve").

C.    **Analysis**

Plaintiffs assert that Defendants spoliated: (1) documents showing inmate location information, (2) video surveillance footage, and (3) telephone recordings. As an initial matter, the traditional spoliation standards found in *Residential Funding* apply to the documents showing inmate location information, while the newer Rule 37(e) standard applies to the video surveillance footage and telephone recordings. The parties agree that Defendants failed to impose a litigation hold relating to any of these categories of documents. Where the parties disagree is whether Defendants were required to do so, and whether Plaintiffs have sufficiently established the relevance of each set of documents such that spoliation sanctions are warranted. Further, regarding appropriate sanctions, Plaintiffs argue that Defendants acted

11

with the intent to deprive, thus entitling them to a default judgment or an adverse inference instruction, as well as attorney's fees and costs, under Rule 37(e).

As discussed below, the Court finds that sanctions are not warranted for loss of documents concerning inmate location information. Sanctions are warranted, however, for Defendants' failure to preserve the video surveillance footage and telephone recordings. Defendants' duty to preserve arose no later than April 26, 2016, and Plaintiffs have established that the Defendants destroyed relevant evidence after their duty to preserve had attached, and that Plaintiffs were prejudiced by the loss of such evidence. Applying Rule 37(e), the Court finds that Defendants failure to preserve these items was at worst negligent. Nothing in the record suggests that the Defendants destroyed evidence in bad faith or with an intent to deprive. Thus, Plaintiffs are not entitled to Rule 37(e)(2) sanctions, i.e., an adverse inference instruction, a preclusion order, or a default judgment. Sanctions are warranted, however, under Rule 37(e)(1), and thus Plaintiffs are awarded attorney's fees and costs.

### 1.    Defendants' Duty to Preserve Arose No Later Than April 26, 2016

"The obligation to preserve evidence arises when the party has notice that the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to future litigation." *Zubulake v. USB Warburg LLC*, 220 F.R.D. 212, 216 (S.D.N.Y. 2003) (citing *Kronisch v. United States*, 150 F.3d 112, 126-27 (2d Cir. 1998)). At the latest, and for purposes of this motion only,[6] Defendants' duty to preserve arose on or before April 26, 2016, when

---

[6] Nothing in this section is intended to preclude a finding that a duty to preserve documents related to a deliberate indifference claim cannot attach until after a plaintiff suffers serious medical consequences. Indeed, when an inmate dies in custody, this Court questions whether the date of such inmate's death should be a presumptive

Plaintiffs filed their Personal Injury Claim Form, providing explicit notice of a forthcoming wrongful death and medical malpractice lawsuit. (*See* Declaration of David Yan dated January 31, 2019 (ECF 184), Ex. A ("wrongful death caused by the officials of the New York City Department of Correction for failing to save Mr. Zhi Quan Zhang when Mr. Zhi Quan Zhang reported his serious health conditions to the officials of the New York City Department of Correction . . . for almost a year, particularly in the last four months"; "medical doctors . . . failed to diagnosed Mr. Zhi Quan Zhang's cardiac disease"; "as a result of the wrongful actions and medical malpractice [] by the officials of the New York City Department of Correction, Mr. Zhi Quan Zhang died")). No later than this time, Defendants should have implemented a litigation hold.

> **2. Plaintiffs Have Not Demonstrated Relevance and Prejudice as to Inmate Location Information but Plaintiffs Have Done So as to the Video Surveillance Footage and Telephone Recordings, Warranting Sanctions under Rule 37(e)(1)**

A party is not required to preserve every document in its possession. *Zubulake*, 220 F.R.D. at 217. Instead, "[a party] is under a duty to preserve what it knows, or reasonably should know, is relevant in the action, is reasonably calculated to lead to the discovery of admissible evidence, is reasonably likely to be requested during discovery and/or is the subject of a pending discovery request." *Id.* (quoting *Turner v. Hudson Transit Lines, Inc.*, 142 F.R.D. 68,

---

start date for a general duty to preserve, and whether a timely-instituted investigation would have resulted in the preservation of the audio and video tapes sought here. Because Plaintiffs' Personal Injury Claim Form explicitly identified the nature of their claim, the nature of Mr. Zhang's disease and resulting death, and specified a particular time period during which Mr. Zhang allegedly reported his "serious health conditions" to prison officials, the Court finds that the duty to preserve the documents sought in this motion to have arisen, at the very latest, on the date of the filing of the Personal Injury Claim Form.

72 (S.D.N.Y. 1991)). In this context, "relevance" means "something more than sufficiently

probative to satisfy Rule 401 of the Federal Rules of Evidence." *Khatabi v. Bonura*, No. 10-CV-

1168 (ER), 2017 WL 10621191, at *3 (S.D.N.Y. April 21, 2017) (quoting *Residential Funding

Corp.*, 306 F.3d at 108-09). The party "must adduce sufficient evidence from which a reasonable

trier of fact could infer that the destroyed . . . evidence would have been" favorable to its case."

*Id.* This standard applies to both ESI and non-ESI. The Court will address each of Plaintiffs'

categories in turn to determine their relevance to this matter.

### a. Sanctions are Not Warranted for Documents Relating to Inmate Location Information

Plaintiffs seek documents sufficient to show the location of inmates in the housing units

where Mr. Zhang was housed during his incarceration. Plaintiffs argue that they need this

information to identify potential witnesses who would have witnessed Mr. Zhang repeatedly

complaining of chest pain to correction officers and who would possibly have seen and heard

Mr. Zhang in distress. Defendants provided Plaintiffs with a list of inmates who resided in each

housing unit where Mr. Zhang resided, but Plaintiffs argued that the lists provided by

Defendants contained too many names. (Declaration of Gabrielle Apfel dated March 4, 2019

(ECF 188), Ex. B).[7] Plaintiffs thus seek more specific information, including "documents of bed

numbers," "charts list[ing] bed numbers" or a "Head Count Logbook." Defendants maintain that

those specific documents do not exist, and that the only possible sources of inmate location

---

[7] The lists Defendants provided to Plaintiffs were 17 pages, with approximately 50 inmates' names listed on each page, approximately 850 in total. (*See* Apfel Decl., Ex. B). Plaintiffs did not represent whether they investigated any names on the list or ever tried to find any of the listed individuals.

information or bed assignments might have been specific housing area log books, but that

correction officers were not under any obligation to note bed assignments.[8]

Based on the record before the Court, there is insufficient evidence to conclude that

"documents of bed numbers" or "bed charts with numbers" ever existed. First, Defendants

have denied their existence. The parties and the Court discussed Plaintiffs' document requests

regarding these items several times by letter, *see, e.g.*, ECF 120, 128, and in person at the July

12, 2018 conference. On each occasion, Defendants represented that the only possible location

of information regarding an inmate's bed assignment might be specific housing area log books,

and not any other documents or charts. Further, Plaintiffs, who include only one sentence on

these items in their motion, have not shown otherwise. (*See* Plaintiffs' Memo of Law (ECF 185)

at 4 ("Defendants did not produce 'the documents of bed numbers, bed charts with numbers'

or 'a sworn statement explaining how the documents were maintained by the prison [].".)).

Nothing in the record supports a finding that these specific documents ever existed, and so the

Court cannot find that Defendants had a duty to preserve them.

Defendants' duty to preserve also did not extend to "housing area log books." As noted

above, a party is not required to preserve "every document in its possession." *Zubulake*, 220

F.R.D. at 217. Rather, a party's duty to preserve extends only to information "likely to have

discoverable information that the disclosing party may use to support its claims or defenses."

---

[8] After this Court ordered Defendants to produce to Plaintiffs housing area log books for specific dates identified by Plaintiffs (dates on which Mr. Zhang allegedly complained to correction officers), Defendants produced log books for nine of the eighteen time periods. Defendants represented, however, that the remaining log books ordered to be produced (from an additional nine time periods) could not be located.

*Id.* at 218 (citing Fed. R. Civ. P. 26(a)(1)(A) (emphasis added)). Here, Defendants explained that correction officers are not obligated to note inmate bed numbers in housing unit log books. Indeed, of the nine housing area logbooks produced to Plaintiffs, none contained information on inmate bed numbers or locations. (Defendants' Memo of Law (ECF 187) at 5). Thus, nothing in the record supports an inference that Defendants either knew or should have known that they needed to preserve housing unit log books in the event of future litigation, *see id.* at 217, or that the lost housing unit log books "would have been favorable to [Plaintiffs'] case." *Khatabi*, 2017 WL 10621191, at *3 (quoting *Residential Funding Corp.*, 306 F.3d at 108-09). Accordingly, spoliation sanctions are not warranted with regard to documents relating to inmate location information.[9]

> ### b. Sanctions are Warranted Under Rule 37(e)(1) but not Rule 37(e)(2) for the Loss of the Video Surveillance Footage and Telephone Recordings

As noted above, for ESI, Plaintiffs must show that Defendants "acted with the intent to deprive [Plaintiffs] of the information's use in the litigation" before the sanctions listed in subsection (2) of Rule 37(e) are available. Fed. R. Civ. P. 37(e)(2). This intent standard is stringent, requiring clear and convincing evidence that the spoliating party acted with the "intent to actually deprive another party of evidence." *Leidig v. Buzzfeed, Inc.*, No. 16-CV-542,

---

[9] As noted above, Defendants provided Plaintiffs with a list of inmates who resided in each housing unit where Mr. Zhang resided. Because Plaintiffs have these lists, and because Plaintiffs found at least one witness, Mr. Juan Requena (whose bed was located directly next to Mr. Zhang from the end of February until late March 2016), even if Plaintiffs had established that Defendants' duty to preserve extended to housing unit log books, Plaintiffs' prejudice from any alleged spoliation of additional documents relating to inmate location information is minimal. Indeed, Plaintiffs did not even ask Mr. Requena during his deposition if he could help identify other potential witnesses. (Yan Decl., Ex. J).

2017 WL 6512353 (GWG), at *11 (S.D.N.Y. Dec. 19, 2017). Absent a showing of "intent to deprive," Plaintiffs' relief is limited to sanctions under subsection (1) of Rule 37(e).

Here, the circumstances surrounding Defendants' loss of ESI do not support an inference that Defendants acted with the intent to deprive Plaintiff of evidence. While Defendants admitted that they failed to take *any* steps to preserve the video surveillance footage and telephone recordings prior to their destruction, once ordered by the Court to investigate, Defendants did so immediately and transparently reported their findings. *Cf. Report & Recommendation*, *Cruz v. G-Star, Inc., et al.*, No. 17-CV-7685, (S.D.N.Y. June 19, 2019) (Wang, M.J.), ECF No. 89 (finding an intent to deprive where, in an FLSA and employment discrimination case, defendants and outside litigation counsel failed to impose a litigation hold after the plaintiff's filing of two internal human resources complaints, internal discussions regarding the plaintiff's termination, the plaintiff's subsequent termination, and communications between the plaintiff's counsel and defendants' outside counsel concerning a proposed lawsuit, resulting in the destruction of the plaintiff's ESI; defendants also misrepresented to the plaintiff and to the Court defendants' ability to produce the plaintiff's ESI for over four months). Further, nothing in the record suggests that Defendants selectively destroyed evidence. Indeed, Plaintiffs can obtain (and have obtained) other evidence—such as testimony of other inmates and family members with whom Mr. Zhang spoke about his illness, not to mention Mr. Zhang's medical records—with which to prove their case. *Cf. id.* (destruction of Plaintiffs' entire email file prejudiced Plaintiffs' ability to prove her FLSA and employment discrimination case)*; Moody v. CSX Transportation, Inc.*, 271 F. Supp. 3d 410, 430-

32 (W.D.N.Y. 2017) (intent to deprive where defendant spoliated "critical and irreplaceable data" that would have "conclusively determined" the central factual issue in dispute).

### i. Video Surveillance Footage

Plaintiffs seek video surveillance footage from Mr. Zhang's housing unit. The requested footage is limited to specific dates on which Mr. Zhang sought the assistance of a correction officer for chest pain during the night.

According to David Kim, a Correction Officer in the Office of the Chief of Department, the Department of Correction retains video surveillance footage for 90 days, unless pulled from the server pursuant to a retention request. (Apfel Decl., Ex. E, ¶ 6). All video surveillance is overwritten after 90 days. (*Id.*). Therefore, Defendants did not have a duty to preserve any video surveillance footage older than 90 days at the time their duty to preserve arose, here, no later than April 26, 2016. By the time Defendants duty to preserve arose in April 2016, the video surveillance from June 9, 2015, September 4, 2015, September 5, 2015, and November 13, 2015 would have been overwritten pursuant to Defendants' destruction and retention policy. Thus, Defendants did not have a duty to preserve the video surveillance footage from those four dates.

The video surveillance footage from the remaining three dates, however, should have still been available in April 2016 when Defendants' duty to preserve arose. A party's duty to preserve extends to any evidence "likely to have discoverable information that the disclosing party may use to support its claims or defenses." *Id.* at 218 (citing Fed. R. Civ. P. 26(a)(1)(A)). The duty also extends to information that is relevant to the claims or defense of any party. *Id.* (citing Fed. R. Civ. P. 26(b)(1)). Here, Plaintiffs' Personal Injury Claim Form provided Defendants

with explicit notice of a forthcoming wrongful death and medical malpractice lawsuit, and also provided Defendants with notice of the specific argument that "Mr. Zhi Quan Zhang reported his serious health conditions to the officials of the New York City Department of Correction . . . *for almost a year, particularly in the last four months*." (*See* Yan Decl., Ex. A) (emphasis added)). Further, the deposition testimony of Juan Requena corroborates Plaintiffs' statement that Mr. Zhang reported his health conditions to correction officers in the months before he died. In fact, Mr. Requena testified that he spoke to correction officers on Mr. Zhang's behalf on at least two occasions regarding Mr. Zhang's health issues and need for medical treatment. Thus, Defendants should have anticipated when they received the Personal Injury Claim Form that video surveillance from the past 90 days would be relevant to the action.

Further, Plaintiffs have established prejudice. According to Plaintiffs, the video surveillance footage—limited to dates where Mr. Zhang complained of chest pain—is relevant to the extent it shows Mr. Zhang's facial expression and movements, Mr. Zhang's interactions with correction officers, and the correction officers' responses. (*See* Plaintiffs' Memo of Law (ECF 185) at 11). In support of this argument, Plaintiffs provide the deposition testimony of Mr. Requena, whose bed was located directly next to Mr. Zhang from the end of February 2016 until late March 2016. (Yan Decl., Ex. J, at 10-11, 30). Although he did not provide exact dates, Mr. Requena testified that Mr. Zhang consistently complained of chest pain to Mr. Requena from mid-February 2016 until late March 2016. (*Id.* at 11-16, 41). Mr. Requena also testified that he spoke to correction officers on Mr. Zhang's behalf on at least two occasions and helped him sign up for sick calls. (*Id.* at 13-15, 64). Therefore, the Court finds that the loss of this footage prejudiced Plaintiffs. Mr. Zhang is no longer alive to testify, and to the extent the

footage showed Mr. Zhang in pain, complaining to correction officers and other inmates, it would have been favorable to Plaintiffs' case. Accordingly, spoliation sanctions are warranted for the loss of video surveillance footage dating from 90 days before April 26, 2016.

## ii. Telephone Recordings

Plaintiffs argue that the deposition testimony of Mr. Requena also shows that Mr. Zhang's family members were aware of his medical conditions, and thus telephone recordings between Mr. Zhang and "his family members and friends could have revealed that [] [Mr.] Zhang complained about Defendants' deliberate indifference to his life-threatening illness." (Plaintiffs' Memo of Law (ECF 185) at 11). Plaintiffs also note that Investigator Malik Aziz listened to Mr. Zhang's telephone calls, of which there were approximately 45 made between January 1, 2016 and March 30, 2016. (*Id*. at 1; Yan Decl., Ex. G). The Complaint alleges that Mr. Zhang told Plaintiffs and other members of his family that correction officers "would not let him to go to see a doctor without an appointment," that "he had to request [] advanced appointments that would make him [] wait for quite a long time," and that "he was only given pain killers every time [] he was brought to the clinic even though he told the staff in the clinic that his pain was severe." (Comp. ¶¶ 89-90). These allegations suffice to show relevance and prejudice from the loss of these telephone recordings. Again, Mr. Zhang is not alive to testify; Defendants' destruction of these recordings has prejudiced Plaintiffs' case by denying Plaintiffs' the ability to corroborate Mr. Zhang's family members' testimony at trial. Defendants' destruction of these recordings "limited the universe of documents available for [Plaintiffs] to use in this litigation." *Lokai*, 2018 WL 1512055, at *12; *see CAT3, LLC v. Black Lineage, Inc.*, 164 F. Supp. 3d 488, 497 (S.D.N.Y. Jan. 12, 2016) ("Plaintiff[s'] case against Defendants is weaker

when [they] cannot present the overwhelming quantity of evidence it otherwise would have to support its case." (quoting *Victor Stanley v. Creative Pipe, Inc.*, 269 F.R.D. 497, 533 (D. Md. 2010)).

### 3. Failure to Appear at Deposition

Plaintiffs' motion notes only that "at least one of the Correction Officers did not attend the depositions duly noticed and ordered." *See* Plaintiffs' Memo of Law (ECF 185) at 4. Plaintiffs do not name the officer or provide any further argument on this issue until their Reply. Defendants explain that Correction Officer Whitaker did not appear for her deposition on October 10, 2018. (Defendants' Memo of Law (ECF 187) at 15). Defendants were later advised by the Department of Correction that Officer Whitaker was out on medical leave. (*Id.*). Efforts to contact Officer Whitaker over the next month were unsuccessful as she remained "out on medical leave due to illness." (*Id.*).

Plaintiffs argue that Officer Whitaker is a party because she is one of the named Jane Does in the Complaint. This argument is incorrect. Judge Keenan has not issued a decision on Plaintiffs' motion to amend, and a review of Plaintiffs' motion papers does not reveal any mention of Officer Whitaker as a proposed party. Correction officers not individually named are not considered parties. *See Fox v. Lee*, No. 15-CV-0390 (TJM) (CFH), 2018 WL 1187404 (N.D.N.Y. Feb. 5, 2018) (characterizing unnamed correction officers are nonparties).

Further, sanctions are not warranted whether Officer Whitaker is a 30(b)(6) designee or a nonparty. Both Federal Rule of Civil Procedure 37(d), which provides that sanctions may be imposed on a party whose Rule 30(b)(6) designee "fails, after being served with proper notice, to appear for that person's deposition," and Federal Rule of Civil Procedure 45(e), "[t]he only

authority in the Federal Rules of Civil Procedure for the imposition of sanctions against a nonparty for failure to comply with a subpoena duces tecum," *Bender v. Del Valle*, No. 05-CV-6459 (GEL) (RLE), 2007 WL 1686322, at *2 (S.D.N.Y. 2007) (quoting *Application of Sumar*, 123 F.R.D. 467, 473 (S.D.N.Y. 1988)), generally require a violation of a court order before sanctions may be imposed. Plaintiffs point to the Court's June 5, 2018 Order. (ECF 118). That Order, however, does not identify Officer Whitaker by name or include any deposition dates. Moreover, based on Defendants' counsel's representations, Officer Whitaker had good cause for failure to appear at her deposition, and Plaintiffs' counsel has not provided any evidence to suggest otherwise. Therefore, the Court finds that sanctions are not warranted for Correction Officer Whitaker's deposition.[10]

### 4.    Appropriate Sanction

Because Plaintiffs have established relevancy and prejudice for the loss of the video surveillance footage and telephone recordings, spoliation sanctions are warranted. Plaintiffs request, in the alternative, (1) "an adverse influence" [sic], which appears to be a request for entry of a default judgment; or (2) an adverse inference instruction. Plaintiffs also seek costs and attorneys' fees. As discussed above, because nothing in the record suggests that the Defendants destroyed evidence in bad faith or with an intent to deprive, Plaintiffs are not entitled to a default judgment or adverse inference.

---

[10] According to Defendants, Plaintiffs never requested a new date for Officer Whitaker's deposition. (*See* Defendants' Memo of Law (ECF 187) at 16). Plaintiffs appear to concede as much, instead arguing that defense counsel should have done so. (*See* Plaintiffs' Reply (ECF 189) at 9) ("Defense counsels have failed to move the Court to extend the discovery for cause and provide Correction Officer Whitaker another chance to be deposed.").

Plaintiffs are entitled, however, to the attorneys' fees and costs Plaintiffs incurred from May 1, 2018 to the present in litigating the issues of the video surveillance footage and the telephone recordings, including those Plaintiffs incurred in connection with the instant motion. As to the amount of the award, Plaintiffs shall submit their fee application by **October 4, 2019**. Defendants may submit a challenge to Plaintiffs' calculation by **October 18, 2019** and Plaintiffs may reply by **October 25, 2019**. A status conference will be held on **October 29, 2019 at 10:00 a.m.** at the Daniel Patrick Moynihan Courthouse, 500 Pearl St., Courtroom 20D.

**SO ORDERED.**

_s/  Ona T. Wang_

Dated: August 20, 2019                                        **Ona T. Wang**
     New York, New York                           United States Magistrate Judge