USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 09/19/2019

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------- X
MAN ZHANG and CHUNMAN ZHANG,
individually, and as ADMINISTRATORS
of the estate of ZHIQUAN ZHANG,
deceased,

        Plaintiffs,

  -against-

THE CITY OF NEW YORK, et al.,

        Defendants.
------------------------------------- X

No. 17 Civ. 5415 (JFK)
**OPINION & ORDER**

APPEARANCES

FOR PLAINTIFFS
    David Yan
    LAW OFFICES OF DAVID YAN

FOR DEFENDANTS
    Daniel Gerard May
    Gabrielle Apfel
    Joseph Shmulewitz
    Laura Anne Delvecchio
    Ryan Michael Cleary
    Tucker Christian Kramer
    HEIDELL, PITTONI, MURPHY & BACH, LLP

**JOHN F. KEENAN, United States District Judge:**

    Before the Court are Plaintiffs' motions (1) for leave to file an amended complaint and (2) to add a new defendant to their complaint. For the reasons below, Plaintiffs' motions are both denied.

## I. Background

### A. Factual Background

1

The Court assumes familiarity with the facts of this case as stated in its June 28, 2018 Opinion and Order (the "June 28 Order"). See Man Zhang v. City of New York, 17-CV-5415 (JFK), 2018 WL 3187343 (S.D.N.Y. June 28, 2018). To briefly summarize, following his arrest on unspecified charges, Zhiquan Zhang ("Zhang") was detained at Rikers Island to await trial. Over the next year, Zhang—who had a history of hypertension and coronary disease—frequently complained of pain in his chest, his left arm, and lower back. On April 18, 2016, Zhang died while still in pretrial custody of what an autopsy determined to be hypertensive and atherosclerotic cardiovascular disease.

**B. Procedural History**

On July 17, 2017, Zhang's surviving sons Man and Chunman Zhang and the administrators of Zhang's estate (collectively, the "Plaintiffs") filed their initial complaint alleging eight causes of action against Defendants: (1) violations of the Fifth, Eighth, and Fourteenth Amendment rights of equal protection and substantive due process under 42 U.S.C. § 1983; (2) wrongful death entitling Plaintiffs to recovery under New York Estate Powers and Trust Law §§ 5-4.1 and 5-4.3; (3) deprivation of Zhang's society, services and parental guidance; (4) discrimination under § 504 of the Rehabilitation Act of 1973 (29 U.S.C. § 794a(a)) and Title II of the Americans with Disabilities Act (42 U.S.C. § 12131, et seq.); (5) negligence

2

and malpractice; (6) disregarding duty to supervise and train employees and staff; (7) infliction of intentional and negligent emotional distress; and (8) fraudulent concealment.

On June 28, 2018, following Defendants' motion to dismiss, the Court dismissed all claims except for Plaintiffs' (1) Fourteenth Amendment due process claims under 42 U.S.C. § 1983 as to Defendants New York City Health and Hospitals Corporation Employees John and Jane Does 11-20 ("NYCHHC Does 11-20"), Corizon Health, Inc. Employees and Agents John and Jane Does 21-30 ("Corizon Does 21-30"), the City of New York, the New York City Department of Correction ("NYCDOC"), Rikers Island Facilities, the New York City Health and Hospitals Corporation ("NYCHHC"), and Corizon Health, Inc. ("Corizon"); (2) wrongful death claim against all Defendants; and (3) negligence and malpractice against all Defendants. Zhang, 2018 WL 3187343.

On October 8, 2018, Plaintiffs made the instant motions for leave to amend their complaint to reinstate certain dismissed claims and to add an additional defendant. On November 28, 2018, the Court heard oral argument on these motions.

## II. Motion for Leave to Amend

### A. Legal Standards

Leave to amend should be freely granted when justice so requires. Fed. R. Civ. P. 15(a)(2). "Nonetheless, the Court may deny leave if the amendment (1) has been delayed unduly, (2) is

3

sought for dilatory purposes or is made in bad faith, (3) [would prejudice the opposing party], or (4) would be futile." Lee v. Regal Cruises, Ltd., 916 F. Supp. 300, 303 (S.D.N.Y. 1996) (citing Foman v. Davis, 371 U.S. 178, 182 (1962)). "An amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)." Lucente v. Int'l Bus. Machs. Corp., 310 F.3d 243, 258 (2d Cir. 2002) (citing Dougherty v. North Hempstead Bd. of Zoning Appeals, 282 F.3d 83, 88 (2d Cir. 2002)). "Thus, the standard for denying leave to amend based on futility is the same as the standard for granting a motion to dismiss." IBEW Local Union No. 58 Pension Trust Fund & Annuity Fund v. Royal Bank of Scotland Grp., PLC, 783 F.3d 383, 389 (2d Cir. 2015).

Accordingly, in evaluating Plaintiffs' motion to amend, the Court will consider whether the proposed First Amended Complaint (the "FAC") cures the deficiencies the Court identified in its June 28 Order. In so doing, "the Court treats all factual allegations in the [FAC] as true and draws all reasonable inferences" in Plaintiffs' favor. Kuriakose v. Fed. Home Loan Mortg. Corp., 897 F. Supp. 2d 168, 175 (S.D.N.Y. 2012). The Court, however, is not required to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

4

Should the FAC not contain sufficient factual matter to state a claim that is plausible on its face, the Court will deny leave to amend as futile. Balintulo v. Ford Motor Co., 796 F.3d 160, 164-65 (2d Cir. 2015). Additionally, as when presented with a motion to dismiss, a district court may consider "the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010).

### B. Discussion

The FAC attempts to reinstate the following dismissed claims: (1) Fourteenth Amendment due process claims, arising under 42 U.S.C. § 1983, against Defendants New York City Correction Officers John and Jane Does 1-10 ("NYCCO Does 1-10"), New York City Mayor Bill de Blasio ("de Blasio"), then-New York City Department of Correction Commissioner Joseph Ponte ("Ponte"), then-NYCHHC President Ram Raju ("Raju"), NYCHHC Senior Vice President Patsy Yang ("Yang"), and Corizon Chief Executive Officer Karey Witty ("Witty") (collectively with de Blasio, Ponte, Raju and Yang, the "Supervisory Defendants"); (2) negligent supervision; and (3) fraudulent concealment. The Court considers each claim in turn.

#### 1. Fourteenth Amendment Due Process § 1983 Claims

##### a. NYCCO Does 1-10

To establish a Fourteenth Amendment due process violation under § 1983 for unconstitutional conditions of confinement—in this case deliberate indifference to a pretrial detainee's medical needs—a plaintiff must make two showings. Darnell v. Pineiro, 849 F.3d 17, 29 (2d Cir. 2017). A plaintiff must establish that (1) he suffered a "sufficiently serious" deprivation of medical care "to constitute an objective deprivation of [his] right to due process" (the so-called "objective prong") and (2) "the defendant-official acted intentionally to impose the [deprivation of medical care], or recklessly failed to act with reasonable care to mitigate the risk that the [deprivation of medical care] posed to the pretrial detainee even though the defendant-official knew, or should have known, that the [deprivation of medical care] posed an excessive risk to health and safety" (the "mens rea prong"). Id. at 29, 35; see also Lloyd v. City of New York, 246 F. Supp. 3d 704, 719 (S.D.N.Y. 2017).

In its June 28 Order, the Court held that Plaintiffs had failed to allege adequate facts sufficient to satisfy the "mens rea prong" as they had failed to allege that NYCCO Does 1-10 (1) had intentionally deprived Zhang of medical care or (2) knew or should have known that the deprivation of medical care posed an excessive risk to Zhang's health and safety. Zhang, 2018 WL 3187343, at *8. Plaintiffs now argue that the addition of three

6

sentences to paragraph 67 of the FAC resolves this issue. (Mem. of L. in Supp. of Pls.' Mot. at 4-5, ECF No. 173 (filed Oct. 8, 2018) [hereinafter "Mem."].) The additions read, in relevant part, that (1) NYCCO Does 1-10 noted in a September 5, 2015 logbook entry that "Medial [sic] Called for inmate Zhang Zhi 3124 Claim Chest Pains"; (2) Zhang and other inmates reported his chest pains, shoulder pains, shortness of breath, and the ineffectiveness of medications and treatments to NYCCO Does 1-10 on multiple occasions; and (3) NYCCO Does 1-10 did not help Zhang get immediate medical attention despite this knowledge. (First Am. Compl. ¶ 67, ECF No. 172-4 (filed Oct. 8, 2018) [hereinafter "FAC"].)

Here, by Plaintiffs' own admission, NYCCO Does 1-10 got Zhang medical attention after he complained of chest pains on June 9, 2015 and September 15, 2015. (Id. ¶¶ 67, 71.) Further, Zhang saw medical professionals on January 14, 2016 "after he made a sick call"; on February 15, 2016 "after he complained he had left shoulder pain for more than 4 weeks"; on February 22, 2016 in response to Zhang's "emergency call about his left shoulder pain"; and on March 8, 10, 17, and 24, 2016 "about his complaint[s] of left shoulder pain." (Id. ¶¶ 83, 84, 86, 91, 93, 95, 96.) On April 18, 2016, after Zhang collapsed due to heart failure that would prove tragically fatal, one corrections officer performed chest compressions on him and made an

emergency call that brought him medical attention. (Id. ¶ 98.) These facts appear to directly contradict Plaintiffs assertion that "NYCCO Does 1-10 collectively did not help [Zhang] get immediate medical attention." (Id. ¶ 67.) Even if these allegations could coexist, they certainly do not support a conclusion that NYCCO Does 1-10 deliberately deprived Zhang of medical attention or that they recklessly failed to mitigate the risk of harm that a deprivation of medical attention posed since NYCCO Does 1-10 would have had to facilitate Zhang's numerous medical visits and communicated his desire for medical attention to the professionals who saw him. Plaintiffs have, thus, again failed to satisfy the "mens rea prong" for a § 1983 claim as to NYCCO Does 1-10. Accordingly, the Court denies leave to amend on this claim as futile.

### b. The Supervisory Defendants

An individual may be held liable pursuant to a § 1983 claim only if that individual is "personally involved in the alleged deprivation." Littlejohn v. City of New York, 795 F.3d 297, 314 (2d Cir. 2015) (collecting cases). Because vicarious liability is inapplicable in a § 1983 suit, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the constitution." Id. at 314 (quoting Iqbal, 556 U.S. at 676). Such personal involvement may be established by showing that: (1) "the defendant participated

directly in the alleged constitutional violation," (2) "the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong," (3) "the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom," (4) "the defendant was grossly negligent in supervising subordinates who committed the wrongful acts," or (5) "the defendant exhibited deliberate indifference" by failing to act on information that unconstitutional acts were occurring. Id. at 314 (quoting Back v. Hastings on Hudson Union Free Sch. Dist., 365 F.3d 107, 127 (2d Cir. 2004)). A plaintiff must also establish that (1) "the supervisor's actions were the proximate cause of the plaintiff's constitutional deprivation" and (2) "the supervisor's behavior constituted intentional discrimination on the basis of a protected characteristic." Id. (quoting Raspardo v. Carlone, 770 F.3d 97, 116 (2d Cir. 2014)).

In the June 28 Order, the Court dismissed this claim against all five Supervisory Defendants as Plaintiffs had failed to plead facts sufficient to allege that any of the Defendants had the required level of personal involvement in the deprivation of Zhang's medical care. Zhang, 2018 WL 3187343, at *10. Plaintiffs argue that the addition of paragraphs 174 to 180 is sufficient to cure that deficiency. (Mem. at 5-7.)

Paragraph 175 states only that "the Defendants"—which read in context, appears to mean Defendants City of New York, NYCDOC, and Rikers Island Facilities—were aware of the New York State Commission of Correction's ("NYSCOC") 2011 to 2017 annual reports, but either (1) "continued the policies concerning the care, custody and control of the inmates in the detention facilities of" the NYCDOC or (2) "might have made some changes to the policies concerning the care, custody and control of the inmates in the [NYCDOC's] detention facilities." (FAC ¶ 175.) Even if these facts had been referring to the Supervisory Defendants, they do not make any meaningful allegations relating to this claim, let alone anything that is not conclusory or a threadbare recital of the elements of the type the Court will not credit on such a motion. Iqbal, 556 U.S. at 678.

Paragraphs 179 and 180 are lengthy, uncited direct quotes from the NYSCOC's February 2018 report on New York State's "Most Problematic Local Correctional Facilities." (FAC ¶¶ 179, 180; ECF No. 172-3.) These quotes do nothing more than generally describe the state of Rikers Island and document NYCDOC and the City of New York's alleged inaction and unwillingness to act as of early 2018. As Zhang died in April 2016 (FAC ¶ 99), the Supervisory Defendants could not have been aware of this particular report or its conclusions at that time. While similar reports from before Zhang's death may have reached the

same conclusions, Plaintiffs have not provided or cited to any such report. Accordingly, these paragraphs say nothing relevant to the Supervisory Defendants' personal involvement.

Paragraphs 177 and 178 appear to be quotations and summaries from a report similar to the February 2018 discussed above. However, Plaintiffs have failed to cite or explain the origin of this information and offer no information from which the Court might infer the Supervisory Defendants' knowledge. These paragraphs are also irrelevant to this claim.

Finally, the Court is left to consider paragraphs 174 and 176 which allege that (1) the NYSCOC issued annual reports from 2011 to 2017 which detailed the deficient medical care at the relevant Rikers Island facilities and (2) the Supervisory Defendants "have been made aware of [that] deficient medical care" through these reports. (Id. ¶¶ 174, 176.) The Court will consider whether these allegations, read in context with other parts of the FAC, are sufficient to state a claim against each Supervisory Defendant.

The FAC alleges that de Blasio (1) was aware of the deficiencies in medical care at Rikers Island (id.); (2) through unspecified "individual actions" violated Zhang's constitutional rights (id. ¶ 161); and (3) failed to adequately train and supervise employees and staff on Rikers Island, constituting "deliberate indifference to the rights of those who would come

11

into contact with those employees, including" Zhang. (Id. ¶ 166.) Granting every reasonable inference in Plaintiffs favor, this does not sufficiently allege de Blasio's personal involvement. There are no allegations that he participated directly in Zhang's alleged deprivation of medical treatment or that he was informed of the specific actions or types of actions that led to Zhang's death. See Littlejohn, 795 F.3d at 314. Plaintiffs have failed to specify a policy or custom that de Blasio "created" or allowed to continue. Id. There are insufficient factual allegations to support a claim that de Blasio was grossly negligent in supervising his subordinates who committed the alleged deprivation. Id. Finally, there are insufficient facts to support a conclusion of deliberate indifference. Id.

Plaintiffs have alleged that Ponte (1) was aware of deficiencies in medical care at Rikers Island (FAC ¶¶ 174, 176); (2) that through unspecified individual actions he violated Zhang's constitutional rights (id. ¶ 162); (3) that he "promulgated, created or participated in the creation of the policies, practices, and customs under which the unconstitutional conduct occurred and/or he allowed the continuance of such policy, practice and custom" (id. ¶ 163); (4) knew or should have known that continuing the aforementioned, unspecified policies, practices, and customs

12

posed an excessive risk to the health and safety of inmates like Zhang (id. ¶ 164); and (5) failed to adequately train and supervise employees and staff on Rikers Island, constituting deliberate indifference to Zhang as a person who would come into contact with those employees. (Id. ¶ 166). These allegations differ from those against de Blasio only in that they add conclusory allegations or threadbare recitals of the elements which the Court need not credit. Iqbal, 556 U.S. at 678. Accordingly, Plaintiffs have failed to allege Ponte's personal involvement adequately for the reasons already discussed.

Finally, Plaintiffs alleges that Raju, Yang, and Witty through unspecified individual actions, violated Zhang's constitutional rights. (FAC ¶¶ 159, 160.) The allegations against them are effectively the same as those against de Blasio (id. ¶¶ 166, 174, 176) and fail for the same reasons.

The Court further notes that even if these additional allegations had cured the deficiencies identified in the June 28 Order, Plaintiffs still would have failed to allege this claim adequately as they have made no allegations that the Supervisory Defendants' actions (1) were a proximate cause of Zhang's constitutional deprivation or (2) constituted intentional discrimination. Raspardo, 770 F.3d at 116.

### 2. Negligent Supervision

To state a claim for "negligent supervision" under New York law, in addition to the elements of negligence, "a plaintiff must show: (1) that the tort-feasor and the defendant were in an employee-employer relationship, (2) that the employer knew or should have known of the employee's propensity for the conduct which caused the injury prior to the injury's occurrence, and (3) that the tort was committed on the employer's premises or with the employer's chattels." Green v. City of Mount Vernon, 96 F. Supp. 3d 263, 297 (S.D.N.Y. 2015) (quoting Ehrens v. Lutheran Church, 385 F.3d 232, 235 (2d Cir. 2004)).

In the June 28 Order, the Court dismissed this claim holding that Plaintiffs failed to allege adequately that the Defendants NYCDOC, NYCHHC, or Corizon knew or should have known that their employees had a propensity that caused Zhang's death. Zhang, 2018 WL 3187343, at *12. Plaintiffs argue, without further detail, that the factual allegations added in paragraphs 181 to 187 cure these deficiencies. (Mem. at 7-9.)

Paragraphs 181 and 182 contain nothing more than general knowledge about what the New York City Board of Correction is. (FAC ¶¶ 181, 182.) Paragraph 184 states only that the defendants in question knew or should have known about their employees' propensities from a report issued in October 2016. (Id. ¶ 184.) Given that Zhang died in April 2016 it is impossible that Defendants could have read the report before his

14

death. Paragraph 185 is a statistic stating that inmate complaints had increased, taken from the same report and, thus, irrelevant. (Id. ¶ 185.) In any event, Paragraph 183 cites testimony from one Captain Nathaniel Bialek that the "Defendants"—which appears to mean the City of New York, the NYCDOC, and Rikers Island Facilities—were "not aware" of the October 2016 report which does nothing to strengthen Plaintiffs claim. (Id. ¶ 183.) This leaves the Court to consider paragraphs 186 and 187 which allege that the number of complaints filed by "inmate[s]" against medical staff had increased from 88 in 2013, to 130 in 2014, to 201 in 2015 and that these defendants should have known these complaints were not adequately addressed and that conditions were worsening. (Id. ¶¶ 186, 187.) A close reading of the October 2016 report, however, clarifies that these grievances were not specific to the facilities where Zhang was housed and, indeed, Plaintiffs make no allegation that they were. (ECF No. 172-3 at 9.) Further, Plaintiffs have not alleged—and the Report does not indicate—that defendants were aware of these complaints before Zhang's death, that these complaints related to any action on the part of employees who had contact with Zhang, or that the complaints related to the types of behavior and deficiencies which allegedly led to Zhang's death. Without such allegations,

Plaintiffs have failed to allege a claim for negligent supervision adequately. Green, 96 F. Supp. 3d at 297.

### 3. Fraudulent Concealment

Under New York law, to state a prima facie claim for fraud, "a complaint must allege misrepresentation or concealment of a material fact, falsity, scienter on the part of the wrongdoer, justifiable reliance, and resulting injury." Basis Yield Alpha Fund (Master) v. Goldman Sachs Grp., Inc., 115 A.D.3d 128, 135 (1st Dep't 2014) (citing Dembeck v. 220 Cent. Park S., LLC, 33 A.D.3d 491, 492 (1st Dep't 2006)).

In the June 28 Order, the Court dismissed this claim since Plaintiffs had failed to provide any factual details about Zhang's sons' justifiable reliance. Zhang, 2018 WL 3187343, at *13. Plaintiffs argue that the addition of paragraphs 224 to 228 "show that Defendants fraudulently concealed from Plaintiffs both the nature of their rights and Defendants' violation of them." (Mem. at 9-10.)

Paragraphs 224 to 228 are factual allegations that Defendants destroyed relevant phone and video surveillance recordings and that they hid the cause of Zhang's death from his family. (FAC ¶¶ 226-28.) As these paragraphs do not address Zhang's sons' justifiable reliance, Plaintiffs have failed to remedy the identified deficiencies. Accordingly, their motion to amend on this claim is denied as futile.

### III. Motion for Leave to Add a Party

#### A. Legal Standard

Federal Rule of Civil Procedure Rule 21 provides that a court "may at any time, on just terms, add or drop a party." In deciding whether to permit the addition of defendants, courts apply the "same standard of liberality afforded to motions to amend pleadings under Rule 15." Soler v. G & U, Inc., 86 F.R.D. 524, 528 (S.D.N.Y. 1980) (citation omitted).

#### B. Discussion

Plaintiffs seek to add the Vernon C. Bain Center ("VCBC")—the Rikers Island facility where Zhang was detained—as a defendant, but note that if Defendants will concede that VCBC is part of Rikers Island Facilities, they will not seek to add VCBC as an additional defendant. (Mem. at 10; ECF No. 178 at 5.) At oral argument, Defendants agreed that VCBC was part of the Rikers Island Facilities. (Oral Arg. Tr. at 3.) Accordingly, Plaintiffs motion to add VCBC as a defendant is denied as moot.

### Conclusion

For the reasons above, Plaintiffs have failed to remedy any of the deficiencies that the Court identified in their original complaint. Their motion for leave to amend is DENIED as such amendment would be futile. Accordingly, Plaintiffs' claims arising under 42 U.S.C. § 1983 for violation of Zhang's Fourteenth Amendment due process rights are dismissed, with

prejudice, as to Defendants NYCCO Does 1-10, de Blasio, Ponte, Raju, Yang, and Witty. Plaintiffs' claims for fraudulent concealment and negligent supervision are also dismissed with prejudice. Finally, for the reasons above, Plaintiffs motion to add a defendant is DENIED as moot.

The Clerk of Court is respectfully directed to terminate the motions docketed at ECF Nos. 147 and 171.

**SO ORDERED.**

Dated:  New York, New York
        September 19, 2019

                                    John F. Keenan
                                    United States District Judge