**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------x
                                              :

MAN ZHANG and CHUNMAN ZHANG,        :
individually, and as Administrators of the    :
Estate of ZHIQUAN ZHANG,           :    17-CV-5415 (JFK) (OTW)
                                              :

                        Plaintiffs,    :    **MEMORANDUM OPINION & ORDER**
                                              :

              -against-           :

THE CITY OF NEW YORK, et al.,        :

                     Defendants.   :

------------------------------------------------------------x

       **ONA T. WANG, United States Magistrate Judge:**

       Presently before the Court is Defendants' Motion for Reconsideration, (ECF 196),

pursuant to Local Rule 6.3, of my August 20, 2019 Opinion and Order (ECF 190) granting in part

and denying in part Plaintiffs' motion for spoliation sanctions. For the reasons set forth below,

Defendants' motion is **GRANTED** and Plaintiffs' motion is now **DENIED** in its entirety.

**I.**     **Background**

       The Court assumes familiarity with the facts of this case and the tortuous procedural

history leading up to Plaintiffs' motion for spoliation sanctions, which I decided on August 20,

2019. (ECF 190). That decision found that Plaintiffs' "Personal Injury Claim Form" filed on April

26, 2016 (the "April Notice of Claim"), gave rise to a duty to preserve certain selected surveillance

videos[1] beyond the single video preserved of Mr. Zhang's death on April 18, 2016, and directed

---

[1] Specifically, in light of DOCCS' 90-day video surveillance retention policy, (*see* ECF 188-5), I found that at the time Plaintiffs submitted their April Notice of Claim, video surveillance from Mr. Zhang's housing unit should still have

Plaintiffs to submit a fee application for "attorneys' fees and costs Plaintiffs incurred from May 1, 2018 to [August 20, 2019] . . . in litigating the issues of the video surveillance footage and the telephone recordings, including those Plaintiffs incurred in connection with the instant motion." (*Id*. at 23). Defendants then raised policy issues related to the duty to preserve and related to proportionality in the context of a motion for reconsideration, (*see* ECF 191), while Plaintiffs – equally unsatisfied with my ruling – filed Rule 72(a) objections before Judge Keenan, apparently asserting that an award of attorneys' fees and costs was an insufficient sanction in this case. (*See* ECF 203).

## II.     Discussion

The Court held a conference on October 29, 2019, to explore more thoroughly the basis for Defendants' motion for reconsideration. (ECF 228). At that conference, I narrowed the issue on reconsideration to "how particular language in this particular notice of claim [the April Notice of Claim] may or may not have given rise to a duty to preserve video other than [from] the date of his [Mr. Zhang's] death." (*Id*. at 10).[2] In addition to considering the argument and discussion on October 29, I have also considered the parties' submissions at ECF 196, 197, 230, and 231.

_____

existed on 3 of 7 specific dates later proffered by Plaintiffs as dates that Mr. Zhang had sought medical attention for chest pain during the night.

[2] At the conference, I ruled orally that "the filing of a [statutory] notice of claim does not require the City to preserve all surveillance videos for the whole 90-day [retention] period." (ECF 228 at 13). The finding centered upon whether the April Notice of Claim gave rise to a duty to preserve surveillance video from all 2000-plus surveillance cameras at Rikers Island. (ECF 203). Plaintiffs indicated their intention to file an objection pursuant to Rule 72(a) during the conference, and indeed subsequently appealed my finding to Judge Keenan. (*See* ECF 221; ECF 203). They have also filed objections/appealed my August Order granting sanctions, on the ground that they should have been entitled to an adverse inference for the loss of ESI.

**A.      Applicable Legal Standard**

Rule 60(b) provides in pertinent part:

> On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged . . . or (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b).

"Rule 60(b) provides 'extraordinary judicial relief' and can be granted 'only upon a showing of exceptional circumstances.'" *Kubicek v. Westchester Cty.*, No. 8-CV-372(ER), 2014 WL 4898479, at *1 (S.D.N.Y. Sept. 30, 2014) (quoting *Nemaizer v. Baker*, 793 F.2d 58, 61 (2d Cir. 1986)). This necessarily means that the standard for reconsideration "is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). A motion for reconsideration is "neither an occasion for repeating old arguments previously rejected nor an opportunity for making new arguments that could have been previously advanced." *Associated Press v. U.S. Dep't of Def.*, 395 F. Supp. 2d 17, 19 (S.D.N.Y. 2005). Nor is a motion for reconsideration a time to "advance new facts, issues or arguments not previously presented to the Court." *Polsby v. St. Martin's Press, Inc.*, 97-CV-960 (MBM), 2000 WL 98057, at *1 (S.D.N.Y. Jan. 18, 2000) (internal quotation marks omitted).

The decision whether to grant or deny a motion for reconsideration is "within 'the sound discretion of the district court.'" *Premium Sports Inc. v. Connell*, 10-CV-3753(KBF), 2012 WL 2878085, at *1 (S.D.N.Y. July 11, 2012) (quoting *Aczel v. Labonia*, 584 F.3d 52, 61 (2d Cir. 2009)). Moreover, "[t]he moving party bears the burden of proof." *Freedom, N.Y., Inc. v. United States*, 438 F. Supp. 2d 457, 462 (S.D.N.Y. 2006).

Here, based on the nearly three-year history of discovery in this matter (that began with my predecessor to the bench) the Court finds reconsideration appropriate under Fed. R. Civ. P. 60(b)(6). While it is regrettable that Defendants cited to the incorrect notice of claim, and did not make a proportionality argument[3] or defend their timely-instituted investigation during the briefing of Plaintiffs' spoliation motion, Defendants raised significant policy and proportionality considerations[4] (albeit vaguely, and for the first time) in their letter on August 30, 2019, (ECF 191), that warrant reconsideration and, perhaps, clarification. The Court further finds that imposing monetary sanctions on Defendants for this sanctions motion would be unjust, because

---

[3] Indeed, I was at least as concerned, based on the Defendants' arguments, that the Opinion and Order could be construed to mean that <u>no</u> duty to preserve ESI arose unless and until the City received a formal notice of claim. (*See* ECF 190 at n. 6) ("Nothing in this section is intended to preclude a finding that a duty to preserve documents related to a deliberate indifference claim cannot attach until after a plaintiff suffers serious medical consequences. Indeed, **when an inmate dies in custody, this Court questions whether the date of such inmate's death should be a presumptive start date for a general duty to preserve, and whether a timely-instituted investigation would have resulted in the preservation of the audio and video tapes sought here** . . .") (emphases added).

[4] At the October 29, 2019 conference, Defendants stated, "your Honor's decision could be construed by future litigants to hold that a notice of claim may put a city agency on notice to preserve all surveillance video." (ECF 228 at 8). Given the number of personal injury claims and number of video cameras at Rikers Island alone, Defendants argued against such a broad duty to preserve. The Court did not hold that a notice of claim in all instances triggers a duty to preserve all surveillance video.

it would have the effect of subsidizing and thus rewarding Plaintiffs' counsel for his unreasonable discovery tactics. Discovery is a tool, not a weapon.

### B.  Prior Briefing

In the prior briefing, Defendants took the position that Plaintiff's notice of claim created "no obligation to preserve and keep any video surveillance apart from the surveillance depicting Mr. Zhang's death." (ECF 187 at 11.) Unfortunately, Defendants cited to no case law in support of their proposition, and mis-cited and relied on a later-filed notice of claim (the "July Notice of Claim") – dated July 15, 2016 – that contained only general language. [5] Specifically, in light of the City's 90-day retention policy at Rikers Island, the only notice of claim that was served in time to possibly result in preservation of ESI was the April Notice of Claim. (ECF 184-1.) But Defendants quoted and relied only on the July Notice of Claim, (ECF 184-3), which contained no language that would have suggested the need for, or existence of, any relevant video surveillance to be preserved. Plaintiffs noted Defendants' erroneous citation in their reply, but Defendants apparently did not notice their material error in their opposition and did not seek to file a sur-reply.

---

[5] Specifically, Defendants asserted – while relying on quoted language found nowhere in Plaintiff's notice of claim – "Nothing in the Personal Injury Claim Form puts the City of New York on notice to put a litigation hold on a year's worth of video surveillance, as it makes no mention of any complaints or treatment during the period between April 2015 and April 17, 2016." (ECF 187 ¶ 17). The April Notice of Claim explicitly states, however, that the claim arises from "[w]rongful death caused by the officials . . . for failing to save [Mr. Zhang] when [he] reported his serious health conditions to the officials . . . to request the medical attentions and treatments [sic] for almost a year, particularly in the last four months."

Nowhere in the briefing or supporting documentation (or indeed, in any of the several discovery conferences since 2018 where the Court addressed the existence or preservation of ESI) did Defendants make any argument about proportionality or about the reasonableness of their investigation; instead, they focused their arguments on whether the language in the July Notice of Claim (which they mistakenly treated as the language in the April Notice of Claim) provided sufficient notice that any video surveillance footage other than that of Mr. Zhang's death would be relevant. Unfortunately, Defendants also did not detail their independent investigation and preservation efforts, which were undertaken without reference to the April Notice of Claim, until after they sought reconsideration. (*See, e.g.* ECF 228 at 11-12.)

### C.   Defendants' Reconsideration Request

Defendants sought clarification of the Court's August 2019 Opinion, expressing concern that its findings could lead to an indefinite retention of all ESI due to the number of claims filed against the City of New York and the DOC. (ECF 196). Plaintiffs also have not helped their cause, persisting in their argument that the April Notice of Claim "gave rise to a duty to preserve . . . all of the surveillance video for 90 days," even though that was explicitly not the Court's holding. (*See* ECF 228 at 20).

Notwithstanding the colloquy on October 19, and my specific instruction to brief "whether there's a duty to preserve **particular or specific** surveillance videos based on the language that's in the notice of claim," (ECF 228 at 17) (emphases added), Plaintiffs argued only that Defendants had failed to meet the traditional reconsideration standard of introducing new facts or law and – circularly – that the notice of claim required "all relevant evidence" without

6

addressing whether any other surveillance video was indeed relevant, and whether the language in the April Notice of Claim gave rise to a duty to preserve any surveillance video beyond that of Mr. Zhang's death.

### D.      The Duty to Preserve

When making a sanctions motion grounded in spoliation of evidence, the burden is on the party seeking the sanction to demonstrate that the spoliating party "had an obligation to preserve [the evidence] at the time it was destroyed." *Byrnie v. Town of Cromwell, Bd. Of Educ.*, 243 F.3d 93, 107 (2d Cir. 2001); *see* Fed. R. Civ. P. 37(e) (requiring a showing that the lost ESI "should have been preserved in the anticipation or conduct of litigation" and was "lost because a party failed to take reasonable steps to preserve it."). Rule 37(e) permits sanctions for failure to preserve ESI "that should have been preserved in the anticipation or conduct of litigation [that] is lost because a party failed to take reasonable steps to preserve it." Fed. R. Civ. P. 37(e). "In determining the reasonableness of the preservation steps taken, courts may consider, among other things, the proportionality of preservation efforts." *The Sedona Conference Commentary on Proportionality in Electronic Discovery*, 18 Sedona Conf. J. 141, 148 (2017).

The reasonableness of a party's preservation efforts should be assessed at the time the information was destroyed. *See Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 220 (S.D.N.Y. 2003) ("A party seeking an adverse inference instruction (or other sanctions) based on the spoliation of evidence must establish . . . that the party having control over the evidence had an obligation to preserve it at the time it was destroyed."). Here, Plaintiffs sent their notice of claim on or about April 26, 2016, and the preservation letters sent in May and August 2016 reference only videos

7

"involving the death of the decedent."[6] (*See* ECF 184-5, 184-6). Thus, the narrow question on reconsideration is whether the April Notice of Claim and the specific language contained therein required preservation of any other ESI beyond the preserved and produced surveillance video of Mr. Zhang's cardiac arrest on the day of his death. *See Tchatat v. O'Hara*, 249 F.Supp.3d 701, 707-708 (S.D.N.Y. 2017) (discussing timing and scope of duty to preserve evidence; collecting cases). "A party is obligated to preserve evidence when it 'has notice that the evidence is relevant to litigation . . . [or] should have known that the evidence may be relevant to future litigation.'" *Arista Rec. LLC v. Usenet.com, Inc.*, 608 F. Supp.2d 409, 430 (S.D.N.Y.2009) (quoting *Kronisch v. United States,* 150 F.3d 112, 126 (2d Cir.1998)) (citations omitted).

Here, the April Notice of Claim makes no mention of ESI, videos or any particular type of evidence. The pertinent text in the April Notice of Claim reads:

> <u>Manner in which claim arose</u>: Wrongful death caused by the officials of the New York City Department of Correction for failing to save Mr. . . . Zhang when [he] . . . reported his serious health conditions to the officials of the New York City Department of Correction to request the medical attentions [sic] and treatments for almost a year, particularly in the last four months. The medical doctors of the New York City Department of Correction failed to diagnose Mr. . . . Zhang's cardiac disease or cardiopathy. When Mr. . . . Zhang reported his serious health conditions and chest pain to the officials . . . and medical doctors of the New York City Department of Correction, Mr. . . . Zhang died of a heart attack on April 18, 2016.

> <u>The items of damage or injuries claimed are</u>: Due to the wrongful death and medical malpractice caused by the New York City Department of Correction to the decedent . . . , the estate . . . is seeking compensatory damages . . .

---

[6] The letter dated May 27, 2016 submitted by Plaintiff does not have any marking indicating it was received by Defendant, whereas the letter dated August 25, 2016 is stamped "received" on the same date. (*See* ECF 184-5, 184-6).

(ECF 230-1 at 3).

Although Defendants did not discuss their preservation and retention efforts in their opposition to Plaintiffs' spoliation motion, their proffer at the conference in the supplemental briefing indicates that their search and preservation efforts, begun before receipt of the April Notice of Claim, were timely and reasonable. (ECF 228, 230). Even before Plaintiffs served the April Notice of Claim, Defendants investigated Mr. Zhang's death as a potential medical malpractice claim, preserving "all relevant evidence necessary for discovery in this litigation, including but not limited to, medical records, prescription medication records, medical imaging and laboratory studies, the decedent's inmate file, and staff schedules." (ECF 230 at 4).

Additionally, as this Court has learned through motion-by-hindsight, it is not clear whether Defendants could have preserved any relevant video other than the video of Mr. Zhang's final, fatal heart attack. The language in the April Notice of Claim, which was the only notice that referenced a time frame beyond Mr. Zhang's date of death, asserts only that Mr. Zhang sought medical attention for his heart condition "for almost a year, particularly in the last four months." (ECF 230-1).  Rikers has more than 2,100 video cameras recording 24/7 throughout the facility (but notably, not in any medical clinics). (ECF 197-1). Segregating any video where Mr. Zhang appeared would have required determining Mr. Zhang's bed location throughout the entire previous 90 days, which this Court has already determined was not required. (ECF 190). Indeed, even preserving and exporting video before review would have taken a significant amount of time. (*See* ECF 197-1 ¶ 9) (exporting video from nine cameras in area where Mr. Zhang slept would take 15 hours alone). Moreover, there was no indication in the April Notice of Claim of the

particular dates, locations or interactions that would have been considered "relevant" to Plaintiff's claim.[7]

Review of preserved video would also have taken an impossibly long time. Even if there had been an immediate preservation of 2,160 hours of video (24 hours x 90 days) from each of more than 2,100 cameras for the 90 days before Mr. Zhang's death, the preserved video from each working camera would have to be reviewed. It is unclear how any team of reviewers could be expected to review 4.5 million hours (2160 hours per camera x 2100 cameras) of video in our lifetimes, or what any reviewer should or would have flagged in a surveillance video as evidence of deliberate indifference. It strains credulity to expect that Plaintiffs' counsel could have reviewed (or could have credibly intended to review) even 2,160 hours of video from one camera,[8] let alone all 4.5 million hours to which he claims he was entitled. Plaintiffs' counsel himself previously complained that reviewing four or five spreadsheets listing approximately 50 inmates each, to find inmate witnesses, was a "huge amount [of] work if we have to depose about at least about 15, 20 inmates[.]" (Tr. of July 12, 2018 at 14).

---

[7] Although neither side has done the math, if it takes 15 hours to preserve and export 90 days of video from 9 cameras, it would take, on average, 1.67 hours to preserve and export 90 days of video from one camera. Multiplied by 2,100 cameras, it would take approximately 3,500 hours to preserve and export the video from all cameras, or more than 437 8-hour workdays.

[8] Plaintiffs' complaint lists several dates when Mr. Zhang sought medical treatment, and those dates most likely were derived from a review of medical records. Even assuming that Plaintiffs and Defendants had access to all of those dates as of the date of Mr. Zhang's death, **and** assuming that those particular dates are the sole relevant ones (an assumption which is now disputed by Plaintiffs' counsel), that still would have resulted in at least 648 hours of video for Plaintiffs' counsel to review: 9 cameras, (*see* ECF 197-1), sleeping areas (including 9 and 12 cameras in two areas where Mr. Zhang slept) for the three dates, (*see* ECF 190 at 18), multiplied by 24 hours from each camera.

Judge Scheindlin has cautioned that "the party seeking relief has some obligation to make a showing of relevance and eventually prejudice, lest litigation become a "gotcha" game rather than a full and fair opportunity to air the merits of a dispute." *Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec.*, 685 F. Supp. 2d 456, 468 (S.D.N.Y. 2010), *abrogated by Chin v. Port Auth. Of New York & New Jersey*, 685 F.3d 135 (2d Cir. 2012). Here, Defendants attached the incorrect notice of claim to their opposition brief to Plaintiffs' spoliation motion, and thus missed the more nuanced arguments that they could have made. Moreover, they did not describe their document preservation efforts with sufficient specificity for the Court to assess the reasonableness of their actions at the time they undertook them. In short, Defendants failed to defend what turned out to be a defensible document search and preservation process.

Plaintiffs' counsel took advantage of Defendants' inattention, turning the sanctions motion into the very game of "gotcha" that this Court has been trying to avoid.[9] While Defendants' shortcomings in the initial spoliation briefing were regrettable, awarding monetary sanctions in these circumstances would be tantamount to funding and rewarding tactics by Plaintiffs' counsel that have unnecessarily prolonged discovery while doing nothing to advance the merits of this dispute. Plaintiffs' arguments have continually morphed so that Defendants

---

[9] Although not dispositive of the issues here, there exists some evidence that Plaintiffs' counsel may not have pressed the preservation and review of ESI (and in particular, the telephone and video recordings at issue in the sanctions motion) until it became evident that Defendants had not preserved them. Specifically, Defendants point to preservation letters sent by Plaintiffs months after Mr. Zhang's death that requested only the video "involving" Mr. Zhang's death. (ECF 187 at 11; ECF 184-5; ECF 184-6). The July Notice of Claim is also more general than the April Notice of Claim, explicitly stating that Plaintiffs intended to bring a medical malpractice claim, without referencing any particular time frame, or mentioning any deliberate indifference claim.

and the Court have been forced to review numerous prior rulings. For example, this Court limited the scope of video surveillance to particular dates and times listed in the complaint, (ECF 110), and considered the spoliation motion to be addressed to those particular dates. Although Plaintiffs objected to the Court's decision on their spoliation motion on several grounds, (*see* ECF 193), it was not until the conference on October 29, 2019, discussing Defendants' motion for reconsideration, that Plaintiffs asserted that all 4.5 million hours of video surveillance in the 90 days preceding Mr. Zhang's death should have been preserved, speculating that Defendants could have done so at little cost. (*See* ECF 228 at 20-22).[10]

## III.    Conclusion

It would be manifestly unjust to require Defendants to reimburse Plaintiffs' counsel for causing years of litigation over video and audio recordings that were destroyed in the normal course, where Plaintiffs failed to give sufficient and reasonable notice to Defendants at any time before the ESI was destroyed.[11] Accordingly, the Court finds that, on the facts and tortured

---

[10] In relevant part:

MR. YAN: . . . And the ESI could be preserved by a lot of technologists. . . . there's a lot of new technology. They can put it in the cloud. They can put it somewhere. We have nothing from the City, from defense counsel, saying that there's no new technology for these people to preserve these …
. . .
MR. SHMULEWITZ: I'm flabbergasted. Your Honor asked Mr. Yan, point blank, if his position was that the notice of claim, filed in April 2016, created a duty of preservation for all video surveillance. And Mr. Yan's answer today is yes. And I can't think of a polite way to say it other than that's so disingenuous . . . It's incomprehensible to me and it's offensive that now, three years later, Mr. Yan, in open court, having written this . . . preservation letter [that sought only video of Mr. Zhang's death] can sit here and say that his expectation was that the notice of claim created a preservation [obligation] for all surveillance. I'm honestly – I'm in disbelief.

[11] This Court finds that, in light of the facts and procedural history here, the language in the April Notice of Claim, "particularly in the last four months," was insufficient to provide notice that additional ESI should have been reviewed and preserved. Otherwise, shrewd Plaintiff's counsel would insert such language in every notice of claim.

procedural history in this case, reconsideration is **GRANTED** and Plaintiffs' spoliation motion is now **DENIED** in its entirety. Parties are to bear their own costs for this mess.


**SO ORDERED.**


_s/ Ona T. Wang_

Dated: August 17, 2020                                                                          **Ona T. Wang**
     New York, New York                                             United States Magistrate Judge